Robert James LUBBEN, Plaintiff,
Appellant,

v.

SELECTIVE SERVICE SYSTEM LOCAL
BOARD NO. 27 et al., Defendants,
Appellees.

No. 71–1284.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1971.

Decided Jan. 3, 1972.

Timothy Wilton and William A. Norris, Cummington, Mass., for appellant.

George V. Higgins, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

This is an appeal from the vacation of a final judgment. The appellant, Robert James Lubben, obtained a permanent injunction precluding his induction into the armed services until his Local Board complied with certain conditions.[1] After the precedential support for that injunction was reversed on appeal, the government moved in district court to vacate the injunction, and this motion was granted. Although appellant attacks both the procedural and substantive aspects of that decision, we reach only the procedural issue and hold that the granting of the motion was unauthorized by the Federal Rules of Civil Procedure.

The case arises from appellant's post-induction notice claim for conscientious objector status. A graduate school student at the time, appellant was ordered by his Local Board to report for induction on November 12, 1969. This order was postponed until the first induction call in June 1970, apparently to allow him to finish the school year. On May 7, 1970, appellant requested SSS Form No. 150, the "Special Form for Conscientious Objectors," which he submitted to his Board on June 5 along with a number of letters supporting his claim. His SSS Form No. 150 responses indi-

1. Lubben v. Selective Service System, Local Board No. 27, 316 F.Supp. 230 (D.Mass.1970).

cated that his opposition to war, while based on religious training and beliefs, had not crystallized until after he received his notice of induction. It was not until that time that he fully confronted his beliefs about war. Due to appellant's requested change in classification the Board again postponed induction, and on June 25 interviewed the appellant and a witness. The interviews lasted forty-five minutes, and it is disputed whether they were merely "exploratory interviews" or a hearing on the merits of appellant's claim. Because the claim had not been asserted until after appellant's receipt of an induction notice, the Board "questioned" the sincerity of his beliefs and refused to reopen his classification.[2] A new date was set for induction.

Prior to the new date of induction, appellant sued in federal court to enjoin the Local Board from inducting him. He alleged that he was entitled to an administrative appeal under Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) because a prima facie claim had been presented or because the Board's action amounted to a de facto reopening. The government moved to dismiss for lack of jurisdiction under 50 U.S.C.App. § 460(b) (3),[3] but the district court held that the Board actions amounted to a de facto reopening and took jurisdiction.[4] Crystallization of the appellant's claim after receipt of his induction notice was viewed as a "circumstance beyond his control," allowing the Board to reopen his classification. 32 CFR § 1625.2.[5] On August 10, 1970, the court enjoined the Local Board from inducting appellant without expressly reopening his classification de jure and deciding his claim on the merits, thereby opening the path to a possible administrative appeal. Lubben v. Selective Service System Local Board No. 27, *supra* note 1.

The *Lubben* decision relied heavily on the August 4 decision of another district judge in Lane v. Local Board No. 17, 315 F.Supp. 1355 (D.Mass.1970).[6] *Lane* involved a similar fact pattern, although in that case it was not clear whether the

---

2. A Board memorandum filed after the interview on June 25 stated:

 "The Board believes that the registrant recently became aware of his possible classification of Conscientious Objector after receipt of an Induction Order. Therefore, we question the sincerity of the statements which he offered in support of his claim for a new classification."

 We do not pass on the assertion that this comment on appellant's sincerity amounted to a de facto reopening of his classification thereby affording the right to an administrative appeal.

3. 50 U.S.C.App. § 460(b) (3) provides, in pertinent part:

 "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: . . . . ."

4. Although not expressly stated in the district court's opinion, pre-induction jurisdiction must have been found under the doctrine of Oestereich v. Selective Service System, Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) on the theory that, the Board having reopened appellant's classification, denial of an administration appeal was "blatantly lawless."

5. 32 CFR § 1625.2 provides, in pertinent part:

 "[T]he classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

6. "Because of the very close similarity between this case and the *Lane* case, and in the interests of having judges of this court make the same ruling on substantially similar legal issues whenever it is possible to do so, this decision will be in accord with that of Judge Garrity in *Lane*." Lubben v. Local Board No. 27, *supra* note 1, 316 F.Supp. at 232.

Local Board refused to reopen or re-opened and denied the claim on the merits. The district court took jurisdiction and enjoined that Local Board from inducting Lane until it clarified on what basis his claim was rejected.

The government filed appeals in both *Lane* and *Lubben,* but then stipulated the dismissal of both appeals.[7] Lane filed a cross-appeal, which this court initially decided on February 24, 1971, holding that the district court lacked jurisdiction because the actions of the Board were insufficient to fall within the exception to 50 U.S.C.App. § 460(b) (3) carved out by Oestereich v. Selective Service System Local Board No. 11, *supra* note 4. Pending our disposition of a petition for rehearing of that case, the Supreme Court decided Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). A criminal prosecution for refusal to submit to induction, *Ehlert* held that late crystallization of a conscientious objection to war was not a circumstance beyond one's control within the meaning of 32

CFR § 1625.2,[8] and consequently that the regulation barred reopening a registrant's classification for a conscientious objector claim filed after the mailing of an induction notice.[9] In light of *Ehlert,* this court's opinion of February 24 in *Lane* was withdrawn and in a Memorandum and Judgment of April 29, we held that *Ehlert* precluded federal jurisdiction. Lane v. Local Board No. 17, 445 F.2d 850 (1st Cir. 1971).

On May 8 based on the *Ehlert* decision and this court's reversal of *Lane,* the government moved in district court to vacate the *Lubben* injunction and this motion was granted without a hearing. Appellant moved to set aside this order, which motion was denied after a hearing. He appeals the granting of the government's motion and the denial of his motion.

The government's motion to vacate, although not labelled as such, was made pursuant to Rule 60(b), Fed.R.Civ.P.[10] Rule 60 provides the only avenue of relief from final civil judgments other than by appeal or independent action.

---

7. Lane v. Local Board No. 17, No. 7730 and Lubben v. Selective Service System Local Board No. 27, No. 7734, were dismissed upon the government's motions on December 28, 1970.

8. *See* note 5, *supra.*

9. The decision was grounded on the assurance that such late-filed claims would be given full and fair consideration in the military, and noted that where such was not the situation a wholly different case would be presented.

10. "Rule 60. *Relief from Judgment or Order:*

"(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is

void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

Prior to 1946 the Rule specified only one ground, that of "mistake, inadvertence, surprise, or excusable neglect," but was liberally construed to allow a variety of other grounds. The purpose of the 1946 revision was, *inter alia*, to clarify the former practice by stating *all* the adequate reasons for relief by motion from final judgments.[11] Therefore, in order to succeed, the government's motion to vacate must fall within one of the grounds for relief specified in Rule 60.

Arguably the government's motion to vacate the original *Lubben* decision fits four of the Rule 60(b) reasons:

1) the judgment is void—Rule 60(b)(4);

2) a prior judgment on which it is based has been reversed—Rule 60(b)(5);

3) it is no longer equitable that the judgment should have prospective application—Rule 60(b) (5); and

4) any other reason justifying relief—Rule 60(b) (6).

An analysis of these reasons, however, reveals that none supports the government's motion.

### I

 A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect.[12] In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void,[13] such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.

 Federal courts have jurisdiction over that class of cases which fall within the standard of Oestereich v. Selective Service System Local Board No. 11, *supra* note 4 for preinduction review. Whether the facts of a given case meet that standard is a quasi-jurisdicitional determination,[14] which in the instant case was fully litigated and decided in the district court. That determination could have been attacked in an appeal, but, as it was not a clear usurpation of power,[15] it is now res judicata and immune from collateral attack. *See, e.g.,* Jackson v. Irving Trust Co., 311 U.S. 494, 61 S.Ct. 326, 85 L.Ed. 297 (1941); Treinies v. Sunshine Mining Co., 308 U.S. 66, 75–77, 60 S.Ct. 44, 84 L.Ed. 85 (1939); Stoll v. Gottlieb,

---

11. For more complete background information on Rule 60(b), see 6A Moore's Federal Practice ¶¶ 60.01–60.08 and 7 Moore's Federal Practice ¶¶ 60.09–60.17.

12. For a full discussion of void judgments see 7 Moore's Federal Practice ¶ 60.25.

13. *E. g.,* Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); In re Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); United States to use of Wilson v. Walker, 109 U.S. 258, 3 S.Ct. 277, 27 L.Ed. 927 (1883).

14. Quasi-jurisdictional facts are those which must be alleged and proved to set the judicial machinery in action, but which once established cannot be collaterally attacked. These facts do not go to the subject matter of jurisdiction, "but to a preliminary fact necessary to be proven to authorize the court to act."

Noble v. Union River Logging R.R., 147 U.S. 165, 174, 13 S.Ct. 271, 274, 37 L. Ed. 123 (1893).

15. In a pre-*Ehlert* decision this circuit had suggested that an eleventh hour change in belief could be a circumstance beyond a registrant's control. United States v. Stoppelman, 406 F.2d 127, 131 n. 7 (1st Cir. 1969). The district court in *Lubben* concluded that the Board had found appellant's change in belief to be a circumstance beyond his control, thereby permitting the *de facto* reopening. In light of the strong language of Mulloy v. United States, *supra*, concerning the importance of an administrative appeal following a reopening, there was no plain usurpation of power in holding that refusal to grant an appeal was "blatantly lawless" under *Oestereich.*

305 U.S. 165, 171–172, 59 S.Ct. 134, 83 L. Ed. 104 (1938); Noble v. Union River Logging R.R., *supra* note 14; Carter v. United States, 135 F.2d 858, 861 (5th Cir. 1943).

■ Nor is the judgment below void because the precedent on which it relied has been reversed for lack of jurisdiction. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) involved the res judicata effect of a judgment which had arisen under a statute subsequently declared unconstitutional. The Court held that the past operative existence of the statute could not be erased by a new judicial declaration. Specifically addressing the argument that the lower court lacked jurisdiction because the statute was later held to be unconstitutional, the Court said:

> "We think the argument untenable. The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally." *Id.* at 376, 60 S.Ct. at 319.

The district court had the power to determine its jurisdiction and to rule on the merits of appellant's complaint. The subsequent decisions in *Ehlert* and *Lane*, even if assumed to bear upon the jurisdictional issue in *Lubben*, have no effect on the exercise of that power and consequently have no effect on the validity of the *Lubben* injunction. To hold otherwise would destroy the certainty which allows controversies to be deemed judicially concluded.

## II

■ For a decision to be "based on" a prior judgment within the meaning of Rule 60(b) (5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense. *See, e. g.*, Butler v. Eaton, 141 U.S. 240, 11 S.Ct. 985, 35 L.Ed. 713 (1891),[16] Michigan Surety Co. v. Service Machinery Corp., 277 F.2d 531 (5th Cir. 1960); Block v. Thousandfriend, 170 F.2d 428 (2d Cir. 1948). It is not sufficient that the prior judgment provides only precedent for the decision.

> "It should be noted that while 60(b) (5) authorizes relief from a judgment on the ground that the prior judgment upon which it is *based* has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding." 7 Moore's Federal Practice ¶ 60.26[3] at 325.

■ If reliance upon *Lane* or if *Lane* itself was in error, this could have been corrected by an appeal of the *Lubben* injunction. Upon dismissal of the *Lubben* appeal that decision became final; a change in applicable law does not provide sufficient basis for relief under Rule 60(b) (5). *See* Title v. United States, 263 F.2d 28 (9th Cir.), cert. denied, 359 U.S. 989, 79 S.Ct. 1118, 3 L. Ed.2d 978 (1959); Collins v. City of Wichita, 254 F.2d 837 (10th Cir. 1958); Berryhill v. United States, 199 F.2d 217 (6th Cir. 1952).[17]

16. Although Butler v. Eaton dealt with appellate practice rather than a motion to vacate in district court, it provides insight into the proper meaning of "based on" in Rule 60(b) (5). In *Butler* a prior judgment was held by the lower court to estop a plaintiff in the case at bar, but reversal of the prior judgment removed the estoppel and required the circuit court's reversal.

17. The *Berryhill* opinion attached some significance to the fact that the district court did not rely on any Sixth Circuit

### III

In United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), the Court held that it was the inherent right of a court of equity to modify an injunction in adaptation to changed circumstances which rendered the injunction an instrument of wrong. The clause of Rule 60(b) (5) allowing for relief from the inequitable prospective application of a judgment was designed primarily to incorporate that inherent power, and the clause should be used in light of the *Swift* decision.

> "There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, *whether right or wrong,* is not subject to impeachment in its application to the conditions that existed at its making. . . . *Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions* should lead us to change what was decreed after years of litigation with the consent of all concerned." *Id.* at 119, 52 S.Ct. at 464. (Emphasis added.)

The government has not met its burden of demonstrating that inequity results from continued enforcement of the injunction against appellant's Local Board. Indeed, the conditions of the injunction could have been easily complied with in the year since the dismissal of the *Lubben* appeal, and compliance at this time would not prejudice the Selective Service System. The *Ehlert* and *Lane* decisions were not such subsequent events as to render continued application of the injunction inequitable.

### IV

Rule 60(b) (6), allowing relief for "any other reason justifying relief," is the residual clause of Rule 60(b). The reason asserted must be one *other* than those enumerated in 60(b) (1)–(5), and must be sufficient to justify the relief sought. The residual clause, like Rule 60(b) generally, is not a substitute for an appeal, and in all but exceptional circumstances,[18] the failure to prosecute an appeal will bar relief under that clause. In Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the petitioner moved to vacate a denaturalization judgment after the denaturalization judgment of his brother-in-law (Keilbar), in an identical case, was reversed on appeal. The petitioner had not appealed his own case because he felt it was not worth the expense. The failure to appeal was held to be an exercise of free choice which precluded 60(b) (6) relief:

> "Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the *Keilbar* case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Id.* at 198, 71 S.Ct. at 211.

In the instant case the government initially appealed both *Lane* and *Lubben,* but then made a conscious and deliberate

---

precedent, and that the subsequent change in the law occurred in the Supreme Court's reversal of another circuit. *See also* Loucke v. United States, 21 F.R.D. 305 (S.D.N.Y.1957). We can see no significance in the fact that the reversal came in a case not directly relied upon by the district court and disapprove of

any implication that intra-circuit precedent might fall within the meaning of Rule 60(b) (5).

18. *See* Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).

choice not to pursue either appeal. It received a favorable decision in *Lane* only because of the plaintiff's cross-appeal. We do not speculate on the reasons why the government did not pursue its direct attack on the *Lubben* injunction; it is sufficient that the decision to do so was one of unfettered choice and free will. Having made that choice, the government must now live with its decision.

We need not reach appellant's contention that the Board's comment upon his sincerity distinguishes his situation from that in *Ehlert* or whether such a distinction would meet the *Ostereich* standard for pre-induction jurisdiction. The government's motion to vacate was unauthorized by the federal rules and therefore should not have been granted.

Reversed.