**In re MASTER KEY ANTITRUST LITIGATION.**

**M.D.L. No. 45.**

United States District Court, D. Connecticut.

Oct. 14, 1977.

Lee A. Freeman, Jr., Freeman, Rothe, Freeman & Salzman, co-liaison counsel, Chicago, Ill., H. Laddie Montague, Jr., Berger & Montague, P. C., Philadelphia, Pa., for plaintiffs.

John W. Barnett, Wiggin & Dana, co-liaison counsel, New Haven, Conn., Walter A. Bates, Arter & Hadden, Cleveland, Ohio, for defendants.

## RULING ON MOTIONS FOR RELIEF FROM JUDGMENT

BLUMENFELD, District Judge.

These multidistrict class actions were commenced over seven years ago. Plaintiffs alleged *inter alia* that defendants Eaton Corporation, Sargent & Company and other manufacturers conspired among themselves and with their dealers to fix and maintain the prices of contract hardware. Pursuant to § 4 of the Clayton Act, plaintiffs sought treble damages for their injuries. 15 U.S.C. § 15.

Early in the case, defendants moved for summary judgment contending that plaintiffs had no cause of action because as remote purchasers of the key systems they had no direct contractual dealings with the manufacturers. That motion was denied on two grounds, holding that the ultimate consumers had been injured within the meaning of § 4 of the Clayton Act; and that in any case, there was a question of fact as to whether plaintiffs were in effect "direct purchasers" of the hardware, because they bought from contractors using "cost-plus" or similar fixed mark up arrangements. *In re Master Key Antitrust Litigation*, 1973–2 CCH Trade Cases ¶ 74,680 (D.Conn. Aug. 22, 1973).

After extensive discovery and a series of pretrial motions, *see In re Master Key Antitrust Litigation*, 70 F.R.D. 23 (D.Conn.), *appeal dismissed*, 528 F.2d 5 (2d Cir. 1975), a settlement with two codefendants was approved in June, 1976.[1] Jury trial on the issue of the remaining defendants' liability commenced September 21, 1976. Following the presentation of plaintiffs' case and a substantial portion of Sargent's defense, both Eaton and Sargent settled the cases.[2] On notice to the classes, a fairness hearing was held January 17, 1977, and I approved the settlements as "fair, adequate, reasonable and equitable." *In re Master Key Antitrust Litigation*, M.D.L. Docket No. 45 (Feb. 1, 1977). Joint motions were submitted by plaintiffs and defendants requesting that the actions be dismissed. Eaton also submitted an independent memorandum in support of the settlements. By order dated January 21, 1977, I granted these requests and dismissed with prejudice the actions as to Eaton and Sargent, Rule 41, Fed.R. Civ.P., and directed that final judgment enter as of that date in accordance with Rule 54(b), Fed.R.Civ.P. The time for appeal from these orders has long since expired.

Eaton and Sargent now move to vacate those final judgments pursuant to Rule 60(b), Fed.R.Civ.P., relying on the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 72, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).[3] In *Illinois Brick*, the Court held that indirect purchasers of concrete blocks had no cause of action under § 4 of the Clayton Act against the manufacturers of the product. These motions have no merit in law or equity and warrant only brief discussion.

### I.

While defendants do not specify which provisions of Rule 60(b) are applicable, it is apparent that they depend most heavily on Rule 60(b)(5) and Rule 60(b)(6).[4]

---

1. The order approving the settlements with Emhart Corporation and Ilco Corporation was affirmed on appeal. *Appeal of Exxon Corporation*, 551 F.2d 300 (2d Cir. 1976). Emhart and Ilco have not joined in the instant motions.

2. Settlement with Eaton was reached October 28, 1976, with Sargent November 3, 1976. The defendants agreed to pay the class members a total of $12.6 million.

3. Eaton has also moved to decertify the classes and for related supplemental relief.

4. Rule 60(b), Fed.R.Civ.P. provides in relevant part:

   "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judg-

Rule 60(b)(5) permits the court to relieve a party from a final judgment or order if

> "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

It is clear that a decision is not "based" on a prior judgment where the earlier opinion is merely precedent for that decision. *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 650 (1st Cir. 1972); *Wallace Clark & Co. v. Acheson Industries*, 394 F.Supp. 393, 395 n.4 (S.D.N.Y.1975). As Professor Moore states:

> "[W]hile 60(b)(5) authorizes relief from a judgment on the ground that the prior judgment upon which it is *based* has been reversed or otherwise vacated, it does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding."

7 *Moore's Federal Practice* ¶ 60.26[3] at 325 (2d ed. 1975). If any error was committed in following such Courts of Appeals decisions as *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1087 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971), when the defendants' motions for summary judgment were denied, that error could have been remedied on appeal. A change in decisional law is simply not a ground for relief under Rule 60(b)(5). *Lubben v. Selective Service System Local Bd. No. 27, supra.* A Rule 60(b) motion cannot be used as a substitute for appeal. *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 822 (2d Cir. 1967); *Moore's Federal Practice, supra*, ¶ 60.26[4] at 333–34 (2d ed. 1975). *See also Class v. Norton*, 507 F.2d 1058, 1063 (2d Cir. 1974).

Moreover, the instant final judgments have no prospective application with respect to defendants Eaton and Sargent. The language of Rule 60(b)(5) providing for relief from final judgment when "it is no longer equitable that the judgment should have prospective application" embodies the traditional power of a court of equity to alter an injunctive decree to adapt to new or unforeseen conditions. Mr. Justice Cardozo succinctly noted in *United States v. Swift & Co.*, 286 U.S. 106, 114–15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932), that

> "a court does not abdicate its power to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong."

But the settlement agreements with Eaton and Sargent call for no continuing judicial supervision over the business activities of the defendants. As then Chief Judge Lumbard held, "Rule 60(b)(5) . . . does not cover the case of a judgment for money damages." *Ryan v. United States Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962). In return for a release from any claim arising out of the alleged antitrust violations and without admitting any liability, Eaton and Sargent agreed to pay the plaintiffs a liquidated damage sum. When the court had approved the agreement and the money had been paid, the settlement was consummated, and the actions were dismissed with prejudice. Thus, defendants no longer have any interest in the fund.

## II.

Although courts may possess a "reservoir" of equitable power under Rule 60(b)(6) to alter, modify or vacate their judgments, such powers should be exercised only when "extraordinary circumstances" prevented a party from seeking relief through normal channels of trial or appeal. *Ackermann v. United States*, 340 U.S. 193, 199, 202, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *James Blackstone Mem. Ass'n v. Gulf, Mobile & O. R.R. Co.*, 28 F.R.D. 385, 387 (D.Conn.1961). *Cf. United States v. Cirami,*

---

ment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment."

Defendants do not contend that they have discovered new evidence or that the judgment was void or induced by mistake or fraud.

563 F.2d 26 (2d Cir. 1977). There are no such extraordinary circumstances in this case. Defendants voluntarily, with full knowledge of the consequences, and with the advice of competent counsel, contracted to settle these class actions rather than litigate the merits at trial and if necessary on appeal.

■ If a party makes a conscious and informed choice of litigation strategy, he cannot seek extraordinary relief merely because his assessment of the consequences was incorrect. *Ackermann v. United States, supra; Lubben v. Selective Service System Local Bd. No. 27, supra,* 453 F.2d at 651–52; *Title v. United States,* 263 F.2d 28, 30–31 (9th Cir. 1959); *Weilbacker v. J. H. Winchester & Co.,* 197 F.2d 303, 305 (2d Cir. 1952); *Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.,* 73 F.R.D. 16, 20–21 (D.Del.1976). In *Ackermann v. United States, supra,* denaturalization proceedings against three defendants were consolidated for trial, and judgment was rendered against each of them. On an appeal by one defendant, the United States conceded that the evidence was insufficient to support a judgment of denaturalization. The other defendants took no appeal, but four years later they sought to vacate the judgments pursuant to Rule 60(b)(6). In denying relief, Mr. Justice Minton stated:

> "Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the *Keilbar* case. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."

340 U.S. at 198, 71 S.Ct. at 211–12. The holding in *Ackermann* is controlling here. Eaton and Sargent made free and unfettered decisions to settle, rather than continue their defenses or present further evidence. The plaintiffs and defendants bore the risks of litigation equally.[5] The defendants made their decision and now they must live with it. *Lubben v. Selective Service System Local Bd. No. 27, supra,* 453 F.2d at 652.

The *Master Key* multidistrict class actions involved complicated questions of proof and many difficult questions of law. Plaintiffs were faced with the unenviable task of showing a conspiracy to fix prices without substantial direct evidence. The maintenance of such national class actions raised novel issues. The pending petition for certiorari in *Illinois Brick* was a question mark for all parties.[6] These were all contingencies the litigants were free to compromise by way of settlement.[7] But for the legal risks of their claims, plaintiffs might well have demanded a far greater sum of money before consenting to the dis-

---

5. As Eaton's "Memorandum in Support of Proposed Settlement" candidly proclaims, "The settlement was arrived at and based on the best information known to both sides."

6. The petition for certiorari in *Illinois Brick Co. v. Illinois* was filed on September 17, 1976, 429 U.S. 938, 97 S.Ct. 352, 50 L.Ed.2d 307 (1976). Certiorari was granted November 8, 1976, 427 U.S. 1087, 97 S.Ct. 1093, 51 L.Ed.2d 532 (1976).

7. My approval of the settlements did not necessitate any decision on defendants' ultimate liability. Judge Moore made the point in *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 456 (2d Cir. 1974).

> "It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute. It is well settled that in the judicial consideration of proposed settlements, 'the [trial] judge does not try out or attempt to decide the merits of the controversy,' *West Virginia v. Chas. Pfizer & Co., supra,* 314 F.Supp., at 741, and the appellate court 'need not and should not reach any dispositive conclusions on the admittedly unsettled legal issues . . . .' *West Virginia v. Chas. Pfizer & Co., supra,* 440 F.2d at 1085–1086."

The whole purpose of a settlement is to avoid the risks and burdens of future litigation on the merits.

missal of the actions. If *Illinois Brick* had been decided in favor of the indirect purchasers, plaintiffs could not complain that they settled too cheaply. Defendants are in a similar position. Both sides were at risk; they got exactly what they bargained for.

### III.

My conclusion that *Illinois Brick* affords the defendants no basis for relief pursuant to Rule 60(b) is strengthened by the fact that the Court's decision would not on the merits bring an end to the litigation. When I denied defendants' motions for summary judgment, I did so on two grounds. The second part of that opinion recognized that even under defendants' theory of the law, plaintiffs might still recover; either because they were direct purchasers, or because they bought the hardware as a result of a cost-plus contract, or its equivalent, or through a contractor controlled by the defendants, and were thus constructively direct purchasers. These are questions of fact going to the merits of plaintiffs' claims and were presented to the jury at the trial on liability.[8] The holding of *Illinois Brick* would not have required that judgment be rendered for defendants. While the decision might in retrospect have affected the strength of plaintiffs' case, nonetheless they would still have had a case.[9] The causes of action even after *Illinois Brick* would have been suitable for settlement and compromise.

The decision to settle was a result of defendants' free, open and unfettered choice. It reflected their views and those of their counsel of the risks of jury verdicts on liability and damages and the possibility of success on appeal. No one is endowed with the ability to predict the future, particularly the decisions of a majority of the justices of the Supreme Court. But it is precisely this uncertainty that produces settlements. The agreement is fully enforceable. Defendants' motions to vacate the judgments pursuant to Rule 60(b) and the companion motions are denied.

SO ORDERED.

---

8. See, *e. g.,* the testimony of Douglas Madsen, Trial Tr. at 1877–78.

9. As in their earlier motions for summary judgment, defendants have loosely referred to plaintiffs' "standing." It should be emphasized that *Illinois Brick* was a decision on the merits concerned with whether indirect purchasers might maintain a cause of action under § 4 of the Clayton Act. *Illinois Brick Co. v. Illinois, supra,* 431 U.S. 72, 97 S.Ct. 2061, 52 L.Ed.2d 707. *See also Lank v. New York Stock Exchange,* 548 F.2d 61, 64 (2d Cir. 1977); *Palmer v. Thomson & McKinnon Auchincloss, Inc.,* 427 F.Supp. 915, 919 (D.Conn.1977).