Fremont-Smith, J.
The plaintiff, James Richey (“Richey”), brought this action against the defendants, James F. Sullivan (“Sullivan”), Eugene C. Whitcomb (“Whitcomb”), and Joule Power, Inc. (“Joule”), seeking damages for losses he sustained when he was “frozen out” of a closely held corporation by defendants Sullivan and Whitcomb. In April 1993 the case was tried without a jury on five counts of the plaintiffs complaint, including: (1) wrongful termination and the “freeze out” claim (Count I); (2) breach of express and implied covenants of good faith and fair dealing (Count II); (3) breach of duly of utmost good faith and loyalty (Count III); (4) breach of agreement to pay for accrued unused vacation and sick time (Count V); and (5) a derivative suit brought by Richey on behalf of Joule alleging that Sullivan and Whitcomb had acted improperly in the performance of their duties as officers and directors of Joule (Count VI).
In October 1993, after a jury waived trial, the Court (Butler, J.) entered an Order for Judgment in favor of the plaintiff as to Counts I, II, III, v. and VI of the complaint. As to Counts I, II and III, defendants Sullivan and Whitcomb were ordered to repurchase, at Richey’s option, plaintiffs 25% stock interest in Joule for the price of $ 875,000 plus statutory interest running from June 19, 1990, until the date of payment.[1] As to Count V, the Court awarded Richey damages in the amount of $45,895 plus 12% interest *718 from June 19, 1990 for accrued, unused vacation and sick time. Finally, pursuant to Count VI of the complaint, Whitcomb and Sullivan were ordered to repay to Joule all sums authorized by them to be expended on attorney fees and related costs and expenses incurred in defending the Richey action.
An appeal filed by defendants Sullivan, Whitcomb and Joule on October 28, 1993, was dismissed on June 25, 1996, for lack of prosecution. On June 17, 1996, citing the imminent dismissal of the defendants’ appeal, Richey made separate written demand upon both Sullivan and AVhitcomb to comply with the October, 1993 judgment that they repurchase the stock of the plaintiff for $875,000. Neither Sullivan nor Whitcomb responded to plaintiffs demand letter.
On November 2, 1993, Richey filed a motion to attach the defendants’ real estate and a motion for preliminary injunction seeking to preserve the going concern value of Joule. On June 17, 1994, the Court (Butler, J.) ordered, inter alia, that the defendants: (1) not increase the capital indebtedness of Joule above its existing level; (2) not pledge or encumber any of their personal assets beyond current levels; (3) not sell, transfer, convey or assign their shares of Joule stock; (4) not issue any additional shares of Joule stock; (5) operate Joule in the ordinary course of business and use their best efforts to ensure the well-being of the company. See Order on Plaintiffs Post-Trial Motions dated June 17, 1994. In addition, the Court ordered that a writs of attachment in the amount of $ 1,330,000 issue as to both the real estate of Sullivan and the real estate ofWhitcomb. The Court also issued a writ of attachment in the amount of $ 70,000 as to the real estate of Joule.
On December 1, 1995, defendant Joule filed a suggestion of bankruptcy and entered into Chapter 11 proceedings in the United States Bankruptcy Court for the District of Massachusetts.[2] See Bankruptcy Case No. 95-45-499JFQ filed November 30, 1995. Through its president, Sullivan, Joule submitted a proposed Plan of Reorganization on July 15, 1996. On August 15, 1996, Richey, a Joule creditor, submitted a competing Plan of Reorganization. On August 2, 1996, Richey filed, pursuant to Mass.R.Civ.P. 65.3, a Complaint for Civil Contempt against defendants Sullivan and Whitcomb, to enforce the decision, order and judgment of the Court (Butler, J.) entered in October 1993. Specifically, Richey alleges that Sullivan and Whitcomb are in contempt of: (1) the October Judgment, which requires them, at Richey’s option, to repurchase Richey’s stock for $875,000 plus 12% interest from June 19, 1990; and (2) the Order on Plaintiffs Post-Trial Motions dated June 17, 1994 which requires them to continue to operate Joule in the ordinary course of business. In addition, Richey alleges that Sullivan is in violation of the Order on Plaintiffs Post Trial Motions in that his proposed Plan of Reorganization calls for the alienation of his personal assets, the cancellation of Joule stock, and the issuance of new Joule stock.
On August 27, 1996, Joule filed a Complaint against Richey in the United States Bankruptcy Court alleging, inter alia, bad faith and breach of fiduciary duty arising out of actions taken by Richey to solicit and purchase claims held by other Joule creditors (the “First Joule Complaint”). On September 30, 1996, Joule filed a First Amended Plan of Reorganization and Richey filed a First Amended competing Plan of Reorganization.
On October 30, 1996, Richey and Wdiitcomb entered into a settlement agreement (the “Richey-Whitcomb Settlement”) whereby Richey agreed to release Whitcomb from any liability over and above $10,000 arising out of the October 7, 1993 Judgment. In return, Whitcomb agreed that a Special Meeting of Joule’s Board of Directors would be called to vote to: (1) have Joule withdraw its pending Plan of Reorganization and substitute it with Richey’s competing Plan; (2) terminate the services of Attorney George Nader and the law firm of Zimble & Brettler, retained by Sullivan to represent Joule in the Chapter 11 proceedings; (3) replace Sullivan with Richey as the person to speak and act for Joule in the Chapter 11 proceedings. In addition, Whitcomb agreed that he would vote with Richey on all such matters. See Settlement Agreement dated October 30, 1996.[3]
On October 30, 1996, Joule and Sullivan filed a second complaint in the Bankruptcy Court against Richey and Whitcomb alleging breach of the duty of utmost good faith which they, as directors and shareholders of the corporation, owed to Joule (the “Second Joule Complaint”). In addition, Joule and Sullivan moved to enjoin Richey and Whitcomb from implementing votes taken at the Special Meeting. On November 4, 1996, the Bankruptcy Court (Queenan, J.) enjoined Richey from: (1) interfering in any way with the solicitation of votes concerning confirmation of Joule’s First Amended Plan of Reorganization dated September 30, 1996; and (2) taking any action to fire Joule’s court approved counsel; or (3) in any way impeding the ability of Joule to seek confirmation of its Plan.
On November 12, 1996, Joule, Sullivan, Richey and Whitcomb entered into a Stipulation Regarding Adversary Proceedings and Competing Chapter 11 Plans (the “Stipulation”). Pursuant to the Stipulation, Richey withdrew his competing Plan of Reorganization, Joule’s First Amended Plan of Reorganization was confirmed, and Joule withdrew the First and Second Complaints it filed against Richey in the Bankruptcy Court. Pursuant to the Joule Plan of Reorganization, Richey’s personal claims against Joule were allowed in full and accorded the same treatment as other unsecured claims. The Confirmed Joule Plan did not address Richey’s claims against the individual defen *719 dants, Sullivan and Whitcomb, who were not subject to the jurisdiction of the Bankruptcy Court.
Citing his Complaint for Civil Contempt, Richey now moves, pursuant to Mass.R.Civ.P. 60(b)(5) or 60(b)(6), that the Judgment entered by this Court (Butler, J.) be modified or amended to hold Sullivan and Whitcomb jointly and severally liable to pay the plaintiff $ 875,000 plus 12% statutoiy interest from June 19, 1990, the date Richey was terminated from Joule.[4] Sullivan opposes Richey’s motion to modify or amend the judgment and moves to vacate the attachment on his real estate in the amount of $1,330,000 on his real property in favor of Richey. On May 6, Sullivan’s counsel filed a suggestion of death indicating that Sullivan passed away on April 23, 1997. In addition, on May 6, 1997, citing Sullivan’s death, counsel for Sullivan filed a Memorandum on Dissolution of Attachment After Death of Defendant, seeking to vacate the $1,330,000 attachment against Sullivan’s real estate.
DISCUSSION
Richey’s Motion to Modify or Amend the Judgment
Citing his Complaint for Civil Contempt and arguing that as the prospective repurchase of stock is technically impossible where Joule stock is worthless in the wake of Joule’s bankruptcy, Richey moves, pursuant to Mass.R.Civ.P. 60(b)(5) or 60(b)(6) that the October 1993 judgment in his favor be modified or amended to provide that Sullivan and Whitcomb be held jointly and severally liable to pay Richey the sum of $ 875,000 plus statutory interest in the amount of 12% per year from and after June 19, 1990. Sullivan contends, however, citing Mass.R.Civ.P. 59(e), that Richey’s motion was not timely filed. In addition, Sullivan asserts that a litigant must have “clean hands” to seek relief in the nature of an equitable remedy and further asserts that where a preliminary injunction was issued by the Bankruptcy Court against Richey, Richey is in no position to seek equitable relief before this Court.
While Sullivan asserts that Richey’s motion to modify or amend the judgment was not timely filed pursuant to Mass.R.Civ.P. 59(e),[5] it is well settled that if the relief sought "is made later than ten days after judgment, it is considered to fall within Rule 60(b) ...” Smith and Zobel, 8 Mass. Practice Series at 439.
The purpose of Rule 60(b) is to define the circumstances under which a party may obtain relief from a final judgment. The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court’s conscience that justice be done in light of all the facts.
Banker’s Mortgage Co. v. United States, 423 F.2d 73. 77 (5th Cir. 1970). “A motion brought under rule 60(b) is addressed to the discretion of the judge.” Parrell v. Keenan, 389 Mass. 809, 815 (1983). “The judge will not alter the judgment, however, before the party seeking the vacation meets a heavy burden of persuasion. He must, at an evidentiary hearing, make a ‘clear showing’ that ‘inequity of grievous wrong’ will result from the court’s refusing relief.” Smith and Zobel, 8 Mass. Prac. Series at 484. Motions filed pursuant to Mass.R.Civ.P. 60(b)(5) or 60(b)(6) must be filed within a reasonable time “and the determination of what constitutes a reasonable time also is 'addressed solely to the judge’s discretion.’ ” Parrell, 389 Mass. at 815.
Citing Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645 (1st Cir. 1972), Richey first asserts, pursuant to Mass.R.Civ.P. 60(b)(5), that the Court has the ability to prevent its October 1993 prospective judgment from becoming a “further instrument of wrong.” Id. at 651. Rule 60(b)(5) provides, in pertinent part:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: ... (5) ... or it is no longer equitable that the judgment should have prospective application . . .
Mass.R.Civ.P. 60(b)(5). “In United States v. Swift & Co., 286 U.S. 106 (1932), the Court held that it was the inherent right of a court of equity to modify an injunction in adaptation to changed circumstances which rendered the injunction an instrument of wrong. The clause of Rule 60(b)(5) allowing for relief from the inequitable prospective application of a judgment was designed primarily to incorporate that inherent power ...” Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645, 651 (1st Cir. 1972) (citing United States v. Swift & Co., 286 U.S. 106 (1932)). “Specifically, [this] clause allows relief from a judgment which was valid and equitable when rendered but whose prospective application has, because of changed conditions, become inequitable.” Smith and Zobel, 8 Mass. Prac. Series at 465. Pursuant to a Mass.R.Civ.P. 60(b)(5) motion, therefore, the question before the Court is whether “anything has happened that will justify [the Court] now in changing a decree . . . Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead [the Court] to change what was decreed after years of litigation with the consent of all concerned.” Lubben, 453 F.2d at 651 (citing United States v. Swift & Co., supra at 119).
In the alternative, Richey argues that Mass.R.Civ.P. 60(b)(6) provides a vehicle for the Court to modify or amend a final judgment in the interests of justice for any other reason not specified in Rule 60(b)(l)-(5). Mass.R.Civ.P. 60(b)(6) provides:
On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the *720 following reasons: ... (6) any other reason justifying relief from the operation of the judgment.
Mass.R.Civ.P. 60(b)(6). “In considering a motion under rule 60(b) (6), a judge may consider whether the moving party has a meritorious claim or defense, whether extraordinary circumstances warrant relief, and ‘whether the substantial rights of the parties in the matter in controversy’ will be affected by granting the motion.” Parrell v. Keenan, 389 Mass. 809, 815 (1983) (citations omitted).
Here, it is undisputed that, in October 1993, when the judgment at issue was rendered, the Court determined that plaintiff was entitled to $ 875,000 in return for his Joule shares, an amount equal to 25% of the value of Joule ($ 3,500,000) on the date of his termination. The Court did not consider or address possible future fluctuations in Joule’s market value, choosing instead to value the company, for damages purposes, as of the date of Richey’s termination. Moreover, written evidence submitted by the plaintiff shows that, on June 17, 1996, recognizing that the 1993 judgment in his favor would be final upon the dismissal of the defendant’s appeal, Richey attempted to exercise his rights under the judgment by sending demand letters to both Sullivan and Whitcomb, requesting that they repurchase his Joule shares. In addition, it is undisputed that the defendants ultimately controlled the Joule bankruptcy in that Sullivan’s Plan of Reorganization was confirmed by the bankruptcy court. In view of these uncontroverted facts, the Court finds, in the exercise of its discretion and in the interests of justice, that Richey is entitled to modification of the judgment entered by the court in October 1993. Moreover, while the Court acknowledges that a preliminary injunction issued against Richey in the Bankruptcy Court relative to his actions in Joule’s Chapter 11 proceeding, the Court finds that Joule’s bankruptcy proceedings and Richey’s behavior in connection therewith in no way affected the rights, obligations and liabilities of the individual defendants, Sullivan and Whitcomb. Accordingly, pursuant to Mass.R.Civ.P. 60(b)(5) or 60(b)(6), Richey’s Motion to Modify or Amend the Judgment is ALLOWED.
Sullivan’s Motion to Vacate Real Property Attachment
Sullivan first asserts that M.G.L.c. 209, §1 assures Mrs. Sullivan’s equal rights and interests with respect to real estate which she held as a tenant by the entirety with her husband, the late defendant Sullivan.[6] In addition, Sullivan asserts that M.G.L.c. 209, §1 prevents attachment of the surviving nondebtor spouse’s principal place of residence. Finally, Sullivan maintains that Sullivan’s death vacates all attachments on real property he held as a tenant by the entirety where all interests in such property passed to the surviving non-debtor spouse.
While it is well settled that M.G.L.c. 209, §1, provides that “the interest of a debtor spouse in properly held as tenants by the entirety shall not be subject to seizure or execution by a creditor such debtor so long as such property is the principal residence of the nondebtor spouse,” Peebles v. Minnis, 402 Mass. 282, 283 (1988), M.G.L.c. 209 “does not exempt such property from attachment.” Id.
Here, however, where Mrs. Sullivan’s
husband predeceased her, the wife became the sole owner [of their property] with all the rights of ownership. This right of ownership in a tenancy by the entirely was indestructible. Although an individual creditor of [Sullivan] could levy and sell on execution his interest in the tenancy, and dispossess both the husband and wife, the properly always remained subject to the wife’s survivorship right, and if [Sullivan] died before [his] wife, the creditor lost all of his interest in [Sullivan’s] real estate held by the entirety.
Coraccio v. Lowell Five Cents Savings Bank, 415 Mass. 145, 150 (1993). Accordingly, Sullivan’s motion to vacate the attachment in light of Sullivan’s death is ALLOWED.
ORDER
For the foregoing reasons, Richey’s motion to modify or amend the judgment is ALLOWED as to defendant Whitcomb and judgment shall enter against Whitcomb in the amount of $ 875,000 plus 12% statutory interest from June 19, 1990. Upon Sullivan’s estate being made a party to this action, the Court will enter an Order allowing: (1) Richey’s motion to amend or modify the judgment as to Sullivan’s estate, jointly and severally; and (2) Sullivan’s motion to vacate the attachment.

 In its Order dated October 4, 1993, the Court (Butler, J.) held that:
To appraise the value of a minority shareholder’s interest in a close corporation, the Court must determine the ‘fair value’ of the shares on June 19, 1990, the date of the termination . . . Here, the Court rules that the fair value of plaintiffs stock is the proportional share of ownership interest, twenty-five percent of the overall value of Joule Power on the date of termination.
See Findings of Fact, Rulings of Law and Order, dated October 4, 1993 (Butler, J.), at 27-28. In addition, the Court found that the value of Joule Power on June 19, 1990 was $3,500,000. Thus, the Court held that as a result of plaintiffs freeze out, plaintiff was entitled, at his option, to have his stock repurchased for $ 875,000 (25% of $ 3,500,000). See id.

 It is undisputed that the proceedings in the United States Bankruptcy Court dealt only with the defendant Joule. Neither Sullivan nor Whitcomb sought the protection of or submitted themselves to the jurisdiction of the United State Bankruptcy Court.

 The Richey-Whitcomb settlement was contingent upon certain events in the Joule Chapter 11 proceeding, such as confirmation of the Richey Plan, which did not ultimately occur. As a result, the Richey-Whitcomb settlement was not effectuated.

 Judge Butler has recused herself from acting on these motions.

 Mass.R.Civ.P. 59(e) provides:
Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of judgment.

 M.G.L.c. 209, §1 provides, in pertinent part:
The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse,; provided, however, that both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family.