NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-246

BANK OF NEW YORK MELLON,[1] trustee,[2]

vs.

ALTON KING, JR. (and a consolidated case[3]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Alton King, Jr., appeals from multiple postjudgment orders of a Housing Court judge and a single justice of this court entered after possession of the home formerly occupied by King was awarded to the plaintiff, Bank of New York Mellon (BNY Mellon), following a foreclosure sale and summary process action.  We affirm four orders of the Housing Court judge:  one dated March 9, 2021, dismissing King's direct appeal from the underlying judgment and from the denial of his first motion for relief from the judgment; one dated April 28, 2021, denying King's second motion for relief from the judgment;

---

[1] Formerly known as the Bank of New York.

[2] On behalf of the registered holders of Alternative Loan Trust 2006-J7, Mortgage Pass-Through Certificates, Series 2006-J7.

[3] The consolidated case involves the same parties.

and two dated July 13, 2022, allowing a new execution to issue and denying any other pending motions.  We dismiss as moot (1) the appeal from three orders denying stays of eviction, two by the Housing Court judge (dated April 28, 2021, and March 16, 2022) and one by a single justice of this Court (dated March 17, 2022); and (2) another petition for a stay filed by King in our single justice session.[4]

Background.  In 2006, King and his then wife, Terri Mayes-King, jointly obtained a $1 million adjustable-rate loan secured by a mortgage on the home, to fund an addition.[5]  Four years later, Mayes-King, in her name alone, obtained a loan

---

[4] As soon as the Housing Court judge denied King's emergency motion for a stay on March 16, 2022, King sought a stay from a single justice of this Court (22-J-124).  On March 17, 2022, the petition was denied, and King filed a forty-two page document that the single justice deemed an effective notice of appeal from (1) his (the single justice's) order of that day, (2) the Housing Court judge's order of March 9, 2021, and (3) the Housing Court judge's order of March 16, 2022.  The single justice directed that the appeals be consolidated and entered as 22-P-246, which was the number that had been assigned the previous day to King's appeal from the Housing Court orders of April 28, 2021.  When King thereafter filed another petition for a stay (22-J-575), a different single justice of this court ordered it transferred to 22-P-246.  The appeal from the orders of April 28, 2021, and March 16 and 17, 2022, and the petition for a stay are moot, because BNY Mellon has long since repossessed the home.  See Kahyaoglu v. Sillari Enters., 493 Mass. 1005, 1005 (2023).

We acknowledge that two of the current panelists were among the single justices who acted on various procedural motions King filed in his appeals.  None of the consolidated matters before us concern rulings by any of the panelists.

[5] The note and mortgage were assigned to BNY Mellon in 2017, before the foreclosure.

2

modification that changed the interest rate to a fixed percentage and added a balloon payment due on maturity. Mayes-King defaulted on the modified loan in 2015. A loan servicing company notified both King and Mayes-King of the default by certified mail in 2017. BNY Mellon foreclosed on the mortgage and bought the property at a foreclosure auction the following year. King and Mayes-King continued living in the home after the foreclosure sale.

In early 2019, BNY Mellon filed a summary process eviction action in the Housing Court against both King and Mayes-King.[6] In his answer to the complaint, King averred that BNY Mellon lacked "a superior right to possession and/or [did] not have standing to bring" the action, failed to strictly comply with paragraph 22 of the mortgage, and caused the foreclosure by improperly approving repairs that resulted in property damage. He further claimed that the loan was a product of predatory and unfair lending practices.

BNY Mellon moved for summary judgment, arguing that it had made its prima facie case for possession, which it supported with authenticated documents demonstrating that it was the mortgage holder and that King and Mayes-King received notice of

_____

[6] Mayes-King moved out of the home soon after the foreclosure auction and was dismissed from the summary process suit by written stipulation. She is not a party to this appeal.

3

their right to cure in compliance with both paragraph 22 and G. L. c. 244, § 35B. King, who was not represented by counsel at the time and had failed to file a written opposition, spoke in opposition to the motion.[7] King raised arguments regarding the predatory nature of the loan, code violations stemming from improper repairs, and his inability to obtain counsel. The Housing Court judge granted BNY Mellon's motion for summary judgment, and judgment for possession entered on July 5, 2019. In the order granting summary judgment, the judge stated that King had "failed to file any written opposition and really ha[d] no challenge to the plaintiff's claim for possession." Ten days later King filed a motion for relief from the judgment under Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974), and when that motion was denied, timely filed a notice of appeal. See Mass. R. A. P. 4 (2) (C), as appearing in 481 Mass. 1606 (2019). That appeal was the direct appeal.

In his appellate brief in the direct appeal, King argued that BNY Mellon had failed to strictly comply with the notice provision of the mortgage, that the trial judge had abused his discretion by denying King's request for counsel, and that the

---

[7] King asked the judge to postpone the hearing to allow more time to find an attorney after his representation by a nonprofit organization fell through. The judge refused to delay the hearing because, as noted by BNY Mellon's counsel, King had failed to raise the issue at the case management conference three months earlier.

trial judge had erred by determining that the mortgage loan was not predatory.[8]  After the direct appeal was assigned to a panel of this court but before the panel could reach the merits, however, the Housing Court judge on March 9, 2021, dismissed King's direct appeal for failure to make use and occupancy payments as ordered by the judge and affirmed by the Supreme Judicial Court.[9]  The first of many executions on the judgment was entered.

On March 12, 2021, King filed his second rule 60 (b) motion for relief from the judgment and a motion for a stay of the execution on the judgment.  The rule 60 (b) motion did not address the dismissal of the direct appeal, but rather addressed the validity of the underlying judgment.  The judge denied both

---

[8] We take judicial notice of the docket and papers filed in the Housing Court and related appellate proceedings.  See Jarosz v. Palmer, 436 Mass. 526, 530 (2002).

[9] The Housing Court judge waived the appeal bond otherwise required under G. L. c. 239, § 5, and ordered King to pay $4,000 per month in use and occupancy payments during the appeal.  King appealed the use and occupancy portion of the order to a single justice of this Court.  The single justice vacated that portion of the order and reported the correctness of his decision to a full panel of this Court.  The Supreme Judicial Court took the appeal on its own motion and affirmed both the Housing Court judge's authority to require use and occupancy payments and the amount of the payments that the judge had ordered.  See Bank of N.Y. Mellon v. King, 485 Mass. 37, 39-41 & 53 (2020).

motions on April 28, 2021, and King timely filed a notice of appeal.[10]

Meanwhile, King continued living in the home without making use and occupancy payments, and BNY Mellon repeatedly obtained executions on the judgment. King unsuccessfully sought relief from a range of sources, including the Federal Bankruptcy and District Courts. On March 16, 2022, the Housing Court judge denied an emergency motion by King for a stay of eviction. The next day, a single justice of this court denied King's petition for a stay of eviction, and King appealed. That appeal, and the appeal from the Housing Court orders of April 28, 2021, were consolidated and entered as 22-P-246. See note 4, supra.

On July 13, 2022, the Housing Court judge allowed a motion for a new execution to issue and denied "[a]ny and all pending motions before the court, if there are any." King appealed, and that appeal (23-P-191) was consolidated with 22-P-246 by order of a different single justice of this Court. In 2023, the sheriff's office finally levied on the execution and the bank obtained possession of the home.

_____

[10] In the interim, on April 1, 2021, the panel ordered the direct appeal dismissed. King did not file a notice of appeal from that order. King filed a third motion for relief from the judgment on June 7, 2021, which was denied on June 25, 2021. He did not file a notice of appeal from that order either.

Discussion. In these appeals, King raises numerous, interrelated arguments, virtually all of which are waived, moot, or otherwise outside the scope of this appeal. Notably, King does not address the Housing Court orders of July 13, 2022, and so we do not address them either. Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). The narrow issues before us are whether the Housing Court judge properly dismissed King's direct appeal on March 9, 2021, and denied King's second motion for relief from the judgment on April 28, 2021. King has failed to demonstrate entitlement to relief.

As an initial matter, the Housing Court judge properly dismissed the direct appeal based on King's failure to make use and occupancy payments. The Supreme Judicial Court has already ruled that the Housing Court judge had the authority to require use and occupancy payments and that the amount of the payment ordered was reasonable. See Bank of N.Y. Mellon v. King, 485 Mass. 37, 45-53 (2020). King does not assert that he made the required payments.

Nor did the judge abuse his discretion in denying King's second motion for relief from the judgment. "Rule 60 sets forth a comprehensive framework for obtaining relief from a final judgment or order, balancing the competing needs for finality and flexibility to be certain that justice is done in light of all the facts." Owens v. Mukendi, 448 Mass. 66, 71 (2006),

7

quoting Sahin v. Sahin, 435 Mass. 396, 399-400 (2001). The general thrust of King's motion was that the original judgment for possession in favor of BNY Mellon should not have entered -- for the reasons King had asserted in his direct appeal. Rule 60 "does not provide for general reconsideration of an order or judgment, and does not provide an avenue for obtaining relief from errors correctable on appeal." Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 776 n.12 (2005). We accordingly do not address the issues that King raised, or could have raised, in his direct appeal or in his first rule 60 (b) motion, including his claims challenging BNY Mellon's existence, capacity, and assignment of the mortgage; the propriety of the notices King received; or the conduct of the foreclosure sale.

King's second motion for relief from the judgment cited rule 60 (b) (6), the "catchall provision," which applies only "in extraordinary circumstances" and "is only appropriate when justified by some reason other than those set forth in rule 60 (b) (1)-(5)." Sahin, 435 Mass. at 406-407. Throughout the motion and in his current appellate brief, however, King made arguments to the effect that the judgment of possession was void. See Mass. R. Civ. P. 60 (b) (4). Our review is based on the content of the motion rather than its title. See Colley v. Benson, Young & Downs Ins. Agency, Inc., 42 Mass. App. Ct. 527,

529 (1997).  We therefore treat King's assertion as brought under rule 60 (b) (4).

The denial of a rule 60 (b) (4) motion is reviewed for abuse of discretion.  See Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of Dep't of Developmental Servs., 492 Mass. 772, 785 (2023).  "A judgment is void if the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law."  Harris v. Sannella, 400 Mass. 392, 395 (1987).  Where, as here, "a court has rendered judgment, and opportunities for appeal have been exhausted, . . . the judgment is immune from postjudgment attack unless the court's exercise of jurisdiction constituted a clear usurpation of power" (quotation and citation omitted).  Southwick v. Planning Bd. of Plymouth, 72 Mass. App. Ct. 266, 268 (2008).  See United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661-662 (1st Cir. 1990), quoting Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649 (1st Cir. 1972) ("It is essential to state, that total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and that only 'rare instance[s] of a clear usurpation of power' will render a judgment void").[11]  "In the

---

[11] "As a general principle, the Massachusetts Rules of Civil Procedure are given the same construction as the cognate Federal rules. . . .  In all pertinent respects, Mass. R. Civ. P. 60 (b)

interest of finality, the concept of void judgments is narrowly construed."  O'Dea v. J.A.L., Inc., 30 Mass. App. Ct. 449, 455 (1991), quoting Lubben, supra.

King argues that the judgment was void because he was the victim of predatory and discriminatory lending.  But these allegations did not strip the Housing Court of power to adjudicate the summary process matter.  Indeed, King's reliance on HSBC Bank USA, N.A. v. Morris, 490 Mass. 322 (2022), proves the point.  In Morris, supra at 329-337, the court held that a defendant in a summary process action brought by the assignee of a mortgage loan after a foreclosure sale may assert counterclaims under the Predatory Home Loan Practices Act, G. L. c. 183C.  Such claims, however, do not make the mortgage loan void.  See id. at 332 n.20.  Nothing about the Morris decision suggests that an assignee of the mortgage loan lacks standing or that the Housing Court lacks jurisdiction.  King did not demonstrate a total lack of jurisdiction or a clear usurpation of power in the adjudication of the summary process action in the Housing Court.

Although we offer no view on the merits of King's predatory and discriminatory lending claims, we do not "ignore" them.  Rather, we hold that by failing to make use and occupancy

---

is identical to Fed. R. Civ. P. 60 (b)."  Sahin, 435 Mass. at 400 n.7.

10

payments as required by the Housing Court judge and affirmed by the Supreme Judicial Court, he forfeited his main avenue for appellate review of those claims.  The Housing Court judge did not abuse his discretion in denying King's attempt to resurrect those claims via the second motion for relief from the judgment.

Conclusion.  The following orders of the Housing Court judge are affirmed:  the order dated March 9, 2021, dismissing King's direct appeal; the order dated April 28, 2021, denying the second motion for relief from the judgment; and the orders dated July 13, 2022, allowing a new execution to issue and denying any and all pending motions.  The appeal from the orders of the Housing Court judge dated April 28, 2021, and March 16, 2022, and of the single justice dated March 17, 2022, all denying stays of eviction, is dismissed as moot, as is the petition seeking a stay of eviction.

So ordered.

By the Court (Milkey, Massing & Neyman, JJ.[12]),

Assistant Clerk

Entered:  May 8, 2024.

---

[12] The panelists are listed in order of seniority.

11