**Carlos VILLESCAS, Plaintiff,**

v.

**Spencer ABRAHAM, Secretary, U.S. Department of Energy, Defendant.**

No. CIV. 97–B–1955.

United States District Court, D. Colorado.

Sept. 25, 2003.

John T. Carlson, Federal Public Defenders Office, Darold W. Killmer, Killmer & Lane, LLP, Denver, CO, for Plaintiff.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

### I. Background

Plaintiff Carlos Villescas sued the Department of Energy in 1997 under the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the ADEA, 29 U.S.C.A. § 621 *et seq.* Plaintiff argued that Defendant severely retaliated against him for his testimony in a co-worker's ADEA and Title VII trial that tended to support the co-worker's claims. A trial was held in Plaintiff's case in December 2000. His Title VII claim was presented to the jury. He tried his ADEA claim to the Court.

The jury found that Defendant's conduct did not constitute "adverse action" under Title VII and returned a verdict for the Department of Energy. The jury came to its verdict only after Defendant reversed its long-held, pre-trial position that Plaintiff was "an adulterer and nepotist." Throughout the pre-trial portion of the case, Defendant relentlessly asserted this position. Conversely, Defendant's counsel in her opening statement did not maintain these allegations. In fact, it soon became clear that Defendant no longer adhered to his pre-trial position. Before the jury, Defendant even denied making such accusations. Plaintiff vigorously denied Defendant's allegations and continues to deny them.

Plaintiff constructed his case based on the harm and damage caused by Defendant's imputations. Both Plaintiff's counsel and I were "stunned," *see* Appellee's Supplemental Appendix, 29–35, at Defendant's reversal and denial of its long-held position. I was clear in my disdain for this underhanded trial tactic:

[T]hroughout this case the government has called Mr. Villescas an adulterer, an incestuous person, throughout this case, in the pleadings in this case. Now we get to trial-you know, 'We never said he was an adulterer'.... It's outrageous.... You have littered the paper in this case, which is now public record, calling Mr. Villescas an adulterer, a nepotist. I'm sorry, it's just outrageous. And then to all of a sudden pull this. You know, it's almost like Harry Potter's invisible cloak. Pull it over yourselves and say, 'Oh no, we didn't do anything like that.' It's just outrageous.... [I]t's so slick. It's so slick it's greasy.

*Id.* However, Defendant had absolute immunity to assert its position. Plaintiff considers Defendant's maneuver a deception. So do I. Defendant deceived Plaintiff, deceived me, and very likely deceived the jury.

Plaintiff now contends that, as a result of Defendant's mendacity, the jury verdict on the Title VII claim favored Defendant. As to the ADEA claim I recognized Defendant's ruse, and upon detailed findings of fact, I concluded as a matter of law that the evidence established retaliatory adverse action against Plaintiff. I entered judgment in favor of Plaintiff on his ADEA claim and awarded him $50,000 compensatory damages and $152,530.85 in attorney fees and costs.

Defendant appealed the ADEA judgment. The Tenth Circuit Court of Appeals reversed my damages and attorney-fee award in November 2002 on the ADEA claim. It based its decision on sovereign immunity. *See* 311 F.3d 1253, 1254 (10th Cir.2002). The court explained: "[t]he narrow dispositive question is whether 29 U.S.C. § 633a(c) waives the sovereign immunity of the United States from an ADEA action seeking solely compensatory damages for emotional distress arising from retaliation for engaging in protected conduct. We hold that it does not. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we reverse the judgment of the district court awarding damages, fees and costs against the appellant." *Id.* The sovereign immunity defense was raised by the Defendant for the first time on appeal.

My findings of fact and conclusion of law that Defendant retaliated against Plaintiff were not appealed and were not the basis of the ADEA damages and attorney-fee reversal. My findings and conclusion remain the law of this case. Now, Plaintiff moves for equitable relief and attorney fees to replace the damages and attorney fees I originally awarded him pursuant to his ADEA claim. Plaintiff separately moves under the remedial provisions of Fed.R.Civ.P. 60(b) for me to "correct the injustice of the status quo" and award the $50,000 compensatory damages relief on his original Title VII claim in line with my ADEA findings and conclusion that the government retaliated against him. Plaintiff did not move for Rule 59 relief, appeal the Title VII verdict, or seek *certiorari* in the United States Supreme Court. As discussed below, I deny the Rule 60(b) motion and grant the motion for equitable relief and attorney fees.

## II. Discussion

### A. *Rule 60(b) Relief re: the Title VII Claim*

I address the Rule 60 motion first. Plaintiff submits the Tenth Circuit's ruling in this case has made the prospective effect of the jury's Title VII verdict inequitable. Fed.R.Civ.P. 60(b) states:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon

which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.... The motion shall be made within a reasonable time ....

As a threshold matter, and contrary to what Defendant asserts, Plaintiff's Rule 60(b) motion is not "frivolous." Also, both of Plaintiff's motions were filed within a reasonable time. I have considerable discretion to invoke my equitable powers under Rule 60(b) when events that take place after the entry of judgment render enforcement of the judgment inequitable, *see, e.g., Zimmerman v. Quinn,* 744 F.2d 81, 82–83 (10th Cir.1984). Nonetheless, after considerable research, I conclude that neither Rule 60(b)(5) nor (b)(6) serve to provide the Title VII relief Plaintiff now seeks.

■ Generally, Rule 60(b) relief "is extraordinary and may only be granted in exceptional circumstances." *FDIC ex rel. Heritage Bank & Trust v. United Pac. Ins. Co.,* 152 F.3d 1266, 1272 (10th Cir. 1998), citing *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.,* 909 F.2d 1437, 1440 (10th Cir.1990). Plaintiff contends Defendant duped the jury by hiding its previous allegations of nepotism and adultery. This may be true. However, Defendant was not legally precluded from arguing this new position to the jury. Plaintiff did not seek amendment or alteration of the verdict under Fed.R.Civ.P. 59. Plaintiff did not appeal the jury's verdict.

Plaintiff contends that he was not moved to question the jury verdict until after the Tenth Circuit ruled on the ADEA appeal. Plaintiff's post-trial strategy was probably guided by my ADEA ruling and judgment. But I have no reason to believe Plaintiff did not make an informed and intelligent decision not to appeal the Title VII jury

verdict shortly after it issued. Therefore, I conclude the circumstances of this case, while disturbing, are not "exceptional" under Rule 60(b).

■ Even if this case were "exceptional" under Rule 60(b), neither Rule 60(b)(5) nor (b)(6) provides an adequate basis for relief. Rule 60(b)(5) prevents enforcement of judgments with prospective application when facts or law have changed post-order. *See DeWeerth v. Baldinger,* 38 F.3d 1266 (2nd Cir.1994) (injunction modification); *Reynolds v. McInnes,* 338 F.3d 1221 (11th Cir.2003) (consent-decree modification). Prospective application within the meaning of Rule 60(b)(5) means that the judgment a party seeks to render ineffective: 1) compels a party to perform; 2) orders a party not to perform a future act; or 3) mandates court supervision of continuing interaction between the parties. *See* 47 Am. Jur. *Judgments* § 846; *Twelve John Does v. District of Columbia,* 841 F.2d 1133 (D.C.Cir.1988).

■ Injunctions and consent decrees are the usual prospective judgments that qualify for Rule 60(b)(5) relief: "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show a significant change either in factual conditions or in law." *Agostini v. Felton,* 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (U.S.1997). A denial of relief and dismissal of a claim rarely qualifies as a "prospective judgment" under Rule 60(b)(5). *See Twelve John Does* at 1139–41. Here, while the jury verdict denied Plaintiff relief under Title VII, it had no prospective effect for the purposes of Rule 60(b)(5).

■ "The test for modifying a judgment at the request of a party claiming injury pursuant to ... Rule 60(b)(5) is nothing less than a clear showing of grievous wrong evoked by new and unforeseen

conditions." 47 AM. JUR. *Judgments* § 847, citing, *e.g., Swift Chemical Co. v. Usamex Fertilizers, Inc.,* 646 F.2d 1121 (5th Cir. 1981). "Thus, modification is to be granted cautiously, and only where there is a showing of changed circumstances resulting in extreme and unexpected hardship and oppression." 47 AM. JUR. *Judgments* § 847, citing, *e.g., Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803 (8th Cir.1969). "The court's duty when confronted with such a motion is not to examine the correctness of the existing decree at the time it was entered or even whether it is needed today, but to determine whether, assuming it was needed when entered, intervening changes have eliminated that need." 47 AM. JUR. *Judgments* § 847, citing, *e.g., United States v. Swift & Co.,* 189 F.Supp. 885 (N.D.Ill.1960), *aff'd,* 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961). Here, the Tenth Circuit's decision that effectively upheld my conclusion as a matter of law that Defendant retaliated under the ADEA did not result in the extreme, unexpected hardship and oppression for Plaintiff contemplated by Rule 60(b)(5).

■ Rule 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The Rule does not particularize the factors that justify relief. [However, it does provide me] with authority 'adequate to enable [me] to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" *Klein v. United States,* 880 F.2d 250 (10th Cir.1989), citing *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863–864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). A party must make a "compelling showing of extraordinary circumstances" for Rule 60(b)(6) to apply.

*Dowell* ex rel. *Dowell v. Board of Educ.,* 8 F.3d 1501, 1509 (10th Cir.1993). I should grant relief from judgment under Rule 60(b)(6) only "when it offends justice to deny such relief." *Yapp v. Excel Corp.,* 186 F.3d 1222, 1232 (10th Cir.1999).

■ In the Tenth Circuit, Rule 60(b)(6) relief is applicable when, "after entry of judgment, events not contemplated by the moving party render enforcement of the judgment inequitable." *Cashner v. Freedom Stores,* 98 F.3d 572, 579 (10th Cir. 1996), citing, *e.g., Zimmerman v. Quinn,* 744 F.2d 81, 82–83 (10th Cir.1984) (upholding 60(b)(6) modification of stipulated judgment to allow the receiving party to escape tax liability for the transferred amount for a one year period when both parties had expected funds transfer to occur within sixty days and it did not occur for almost eighteen months); *State Bank v. Gledhill (In re Gledhill ),* 76 F.3d 1070, 1081 (10th Cir.1996) (upholding 60(b)(6) relief and agreeing with bankruptcy court's conclusion that the circumstances of the case had changed significantly since the judgment).

Although Defendant sandbagged Plaintiff and this Court by raising sovereign immunity for the first time before the Tenth Circuit, Plaintiff could have anticipated the Tenth Circuit's decision. Plaintiff does not contest the Tenth Circuit's narrowly defined damages ruling on the ADEA claim. The only event that may have surprised Plaintiff was that the Tenth Circuit effectively upheld my determination of ADEA liability upon the underlying retaliation, but denied Plaintiff an award of compensatory damages and attorney fees.

That is not the kind of "intervening event" contemplated by Rule 60(b)(6). "[T]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests." 11 Charles A. Wright,

Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2864 (2003) (citing *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950)). Plaintiff neither moved for Rule 59 relief within 10 days after the judgment entered nor appealed the Title VII jury verdict. Accordingly, although the question is close, I feel constrained to conclude that neither Rule 60(b)(5) nor (b)(6) relief upon Plaintiff's Title VII claim is appropriate.

## B. Equitable Relief *re:* the ADEA Claim

Plaintiff also moves for equitable relief and attorney fees on his ADEA claim. Here, the question is not close at all. It is axiomatic that a matter of equity will not suffer a wrong without a remedy. *See McClintock on Equity*, West Publications, 2nd ed., 52 (1948). As Plaintiff states, "[a]s it stands now, . . . the equities are perverted." Defendant violated a federal civil-rights law-the ADEA-and retaliated against Plaintiff. Yet he is left without recourse.

 The ADEA provides for equitable relief: "Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." 29 U.S.C. § 633a(c). I have broad authority to construct appropriate equitable relief and a duty to render a decree that will eliminate the discriminatory effects of past actions and prevent future discrimination. *See Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 422, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Roe v. Cheyenne Mt. Conf. Resort*, 124 F.3d 1221, 1230 (10th Cir.1997). I dispense such relief in the context of civil rights statutes such as the ADEA "to make persons whole for injuries suffered on account of unlawful employment activities." *Albemarle*, at 419, 95 S.Ct. 2362.

 Plaintiff argues the need for retributory equitable relief here is especially compelling because the Tenth Circuit erased the damages and attorney-fee award. I agree. As I have said before, "[i]ndeed, it would be a 'monstrous absurdity in a well[-]organized government, that there should be no remedy, although a clear and undeniable right should be shown to exist.'" *Berry v. Stevinson Chevrolet*, 804 F.Supp. 121, 136 (D.Colo. 1992) (Babcock, J.), quoting *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 624, 9 L.Ed. 1181 (1838).

 A defendant who has been determined to be in violation of a civil rights statute has a heavy burden to avoid equitable relief. It can only avoid such relief by providing "clear and convincing proof that there is no reasonable probability of further noncompliance with the law." *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 926 (11th Cir.1990). Defendant has not done that here. Indeed, Defendant itself evidences the need for equitable relief in its Response to this motion. Defendant again reverses course and asserts anew that Plaintiff is an adulterer and a nepotist, *see* Response at 7, note 4, despite my unappealed findings to the contrary.

Plaintiff requests an injunction prohibiting Defendant from any future retaliation against him, citing *Pecker v. Heckler*, 801 F.2d 709, 710 (4th Cir.1986) (enjoining future discrimination). In an affidavit attached to Plaintiff's brief, he avows: "The government's persistence in its campaign of slander and retaliation was so severe that I legitimately fear continued or renewed retaliation. An Order by this Court directing defendants and their officials and agents from any retaliation against me would provide concrete security to me and will emphasize to the government that this

Court's verdict was serious and has teeth." Affidavit, ¶ 7. No prejudice to Defendant would result from such an injunction. I conclude such relief is necessary.

Plaintiff next requests that portions of the record in his case and in the case in which he testified, *Craig v. O'Leary*, 93–K–1828, be sealed. He cites the "numerous and outrageous statements in the records of both cases intended solely to embarrass [Plaintiff]." Plaintiff contends this would "so far as possible eliminate the discriminatory effects of the past." *Albemarle*, 422 U.S. at 418, 95 S.Ct. 2362. Moreover, Plaintiff asserts the availability of such statements to the public constitutes continuing retaliation against him. Plaintiff contends Defendant made false accusations against him of "moral turpitude, dishonesty, adultery, nepotism, and other bad acts." Plaintiff's Affidavit, ¶ 4. Plaintiff is now employed by the EEOC as Deputy District Director of the Denver Office. He contends the effects of such statements in the record are personally and professionally damaging, may affect his chances for promotion, and are impossible to continually "explain away." *Id.* at ¶ 5, 6. I conclude that this relief is warranted. Of course, only the portions of the records in both cases that contain such rhetoric should be sealed.

Plaintiff also requests that I order Defendant to issue a written apology to him. Such an Order is not beyond my equitable authority. *See, e.g., Desjardins v. Van Buren Community Hosp.*, 969 F.2d 1280 (1st Cir.1992). I conclude Plaintiff deserves an apology for Defendant's inexcusable conduct. This relief is appropriate as well.

Finally, Plaintiff requests attorney fees. The Tenth Circuit struck down my attorney fee award in conjunction with its reversal of my ADEA damages award. Here, because Plaintiff asserts his right to attorney fees in connection with my underlying conclusion that Defendant retaliated against him as it relates to equitable relief, I consider it.

A Plaintiff who prevails on federal anti-discrimination statute claims is entitled to fees and costs. *See Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757, 760 (10th Cir. 1999). A party " 'prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Villescas v. Abraham*, 311 F.3d 1253, 1262 (10th Cir.2002), citing *Farrar v. Hobby*, 506 U.S. 103, 111–112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Plaintiff submits he brought this action fundamentally to clear his good name and reputation. He also argues my ruling on his ADEA claim, supplemented by this Order, will "powerfully accomplish the name-clearing result." I agree. I conclude that Plaintiff has prevailed on his ADEA claim and has prevailed on the motion here. Therefore, I award Plaintiff attorney fees.

Defendant contends that equitable relief is not necessary. It is nothing short of perfidy that Defendant, in its Response to Plaintiff's motion, states that Plaintiff "has not denied and cannot deny, the evidence of his adultery and nepotism." Response at 7, note 4. I concluded that there was no evidence-only speculation-to support these allegations. *See* Appellant's Appendix (transcript), attached to Plaintiff's brief, 80–81. That is as true today as it was then. By reasserting these scandalous allegations in the context of these post-judgment motions, Defendant is continuing its retaliation against Plaintiff. This conduct unequivocally manifests the need for the equitable relief ordered here.

ACCORDINGLY, IT IS ORDERED THAT:

1) PLAINTIFF's motion for Rule 60(b) relief is DENIED as to his Title VII claim;

2) PLAINTIFF's motion for equitable relief and attorney fees is GRANTED upon his ADEA claim as follows:

a) DEFENDANT is ENJOINED from retaliating against PLAINTIFF in any form or fashion;

b) Portions of the records in this case and in *Craig v. O'Leary,* 93–K–1828, SHALL BE SEALED. PLAINTIFF SHALL PROVIDE the Court with the specific portions of the records in this case and in *Craig v. O'Leary* to be sealed within 20 days;

c) DEFENDANT SHALL PROVIDE a written apology to PLAINTIFF within 20 days in which it acknowledges its retaliatory actions toward PLAINTIFF; and

d) PLAINTIFF is AWARDED attorney fees and costs in the amount of $152,530.85 for its underlying action. PLAINTIFF SHALL FILE a motion for any additional fees and costs to date within 20 days.