# United States Court of Appeals
## For the First Circuit

No. 08-1735

SAMANTHA J. COMFORT, ETC., ET AL.,

Plaintiffs, Appellants,

v.

LYNN SCHOOL COMMITTEE ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Selya and Lipez,

Circuit Judges.

Chester Darling, with whom Michael Williams, Robert J. Roughsedge, and Citizens for the Preservation of Constitutional Rights,Inc. were on brief, for appellants.
Maura T. Healey, Assistant Attorney General, with whom Martha Coakley, Attorney General, Jeffrey D. Clements and Adam J. Hollingsworth, Assistant Attorneys General, and John C. Mihos, City Solicitor, were on consolidated brief, for appellees.

March 12, 2009

**SELYA**, **Circuit Judge**.  We are called upon today to revisit a case that we thought had gone to its eternal rest.  The tale follows.

Nearly six years ago the district court entered judgment for the defendants in a civil action seeking to strike down, on constitutional grounds, a school transfer/student assignment policy (the Policy) that explicitly considers race as a determining factor in student placement.  Comfort v. Lynn Sch. Comm. (Comfort I), 283 F. Supp. 2d 328, 386-87 (D. Mass. 2003).  This court, sitting en banc, upheld that judgment (and, thus, upheld the Policy) by a one-vote margin.  Comfort v. Lynn Sch. Comm. (Comfort III), 418 F.3d 1 (1st Cir. 2005) (en banc).[1]  The Supreme Court denied the plaintiffs' ensuing petition for a writ of certiorari, 546 U.S. 1061 (2005), and the judgment became final.  That apparently ended the matter.

But appearances can be deceiving, see Aesop, The Wolf in Sheep's Clothing (circa 550 B.C.), and that axiom proved to be applicable here.  Following the Supreme Court's decision in a different case, see Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 127 S. Ct. 2738 (2007), the Comfort plaintiffs invoked Federal Rule of Civil Procedure 60(b)(5) and asked the district

---

[1] The details of the Policy are set out at length in several earlier opinions, see, e.g., Comfort III, 418 F.3d at 7-9; Comfort I, 283 F. Supp. 2d at 347-48, and we refer the curious reader to those opinions.

-2-

court for relief from the final judgment.  The court denied that motion.  Comfort v. Lynn Sch. Comm. (Comfort IV), 541 F. Supp. 2d 429, 433 (D. Mass. 2008).  The plaintiffs now appeal.  We affirm.

We briefly chronicle the events leading up to this appeal.  The underlying litigation began in 1999, when the Comfort family and other similarly situated families sued the Lynn School Committee and a number of allied defendants for, among other things, an injunction to end further use of the Policy (which articulated one aspect of the City of Lynn's method of effecting student placements in the public schools).  The plaintiffs alleged that the Policy was discriminatory because it explicitly relied on race as a criterion for student placement.

After extensive proceedings, the district court upheld the Policy and entered judgment for the defendants.  Comfort I, 283 F. Supp. 2d at 400.  On appeal, a panel of this court disagreed; it declared the Policy unconstitutional and reversed the judgment. Comfort v. Lynn Sch. Comm. (Comfort II), No. 03-2415, 2004 WL 2348505 (1st Cir. Oct. 20, 2004).  The defendants moved successfully for rehearing en banc, and the en banc court withdrew the panel opinion.  See Comfort v. Lynn Sch. Comm., No. 03-2415 (Nov. 24, 2004) (unpublished order).  After further briefing and oral argument, a divided en banc court reinstated the original district court judgment.  Comfort III, 418 F.3d at 23.

Even though the Supreme Court denied the plaintiffs' petition for certiorari, 546 U.S. 1061 (2005), the Court later granted certiorari in Parents Involved, 547 U.S. 1177 (2006). The Court decided that case adversely to the respondent school district, striking down a school transfer/student assignment policy that bore a distinct resemblance to the Policy. See Parents Involved, 127 S. Ct. at 2768. In the process, the Court significantly restricted a school district's ability to assign students based on racial factors. Id. at 2787-88. The Court mentioned the Comfort case several times, including a flat statement that the decision in Comfort III was "inimical to the Constitution." Id. at 2774 (Thomas, J., concurring).

Buoyed by the holding, rationale, and language of Parents Involved, the Comfort plaintiffs moved for relief from judgment in the district court. They maintained that Parents Involved had uprooted the legal foundation on which the decision in Comfort III rested and that, therefore, allowing the judgment to stand would be grossly inequitable. The district court denied the motion. See Comfort IV, 541 F. Supp. 2d at 433. This timely appeal followed.

In the ordinary course, we review an order granting or denying relief from judgment under Rule 60(b) for abuse of discretion. See, e.g., Honneus v. Donovan, 691 F.2d 1, 2 (1st Cir. 1982). The standard is different, however, when an appeal is premised on an abstract question of law, such as a question about

-4-

the meaning or interpretation of the rule itself.  In that event, the appealed ruling engenders de novo review.  See Harvey v. Johanns, 494 F.3d 237, 240 (1st Cir. 2007).  So it is here.

In order to put this appeal into perspective, we begin with a few comments about finality.  We then turn to the plaintiffs' motion.

Courts long have recognized that finality is fundamental to our judicial system.  See, e.g., Guerrero-Santana v. Gonzales, 499 F.3d 90, 92 (1st Cir. 2007); United States v. Boch Olds., Inc., 909 F.2d 657, 660 (1st Cir. 1990).  Once litigation has run its course and all available avenues of appeal have been exhausted, the parties must be able to depend upon the certainty and stability of the resultant judgment.  See United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008); Boch Olds., 909 F.2d at 660.

The importance of finality extends beyond the expectations of the parties involved in a particular case. Finality is an "institutional value[] that transcend[s] the litigants' parochial interests." Oakes v. United States, 400 F.3d 92, 97 (1st Cir. 2005). This institutional interest dictates that the principle of finality should hold sway even when newly emergent decisions materially alter the legal landscape.  See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 541 (1991) (explicating the principle that changes in decisional law "cannot reopen the door already closed").  This framework is in place because, in all

but the most exceptional circumstances, "the great desirability of preserving the principle of finality of judgments preponderates heavily over any claim of injustice."  United States ex rel. Garibaldi v. Orleans Parish Sch. Bd., 397 F.3d 334, 340 (5th Cir. 2005).

In fine, claims once tried, decided on the merits, appealed, and closed should — with only a few exceptions — "be considered forever settled as between the parties."  Feder'd Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) (citation and internal quotation marks omitted).  This imperative would consist of nothing more than empty rhetoric were courts compelled to re-litigate past cases whenever they glimpsed a material change in decisional law.  It follows, therefore, that a case cannot be re-opened simply because some new development makes it appear, in retrospect, that a judgment on the merits long since settled was brought about by judicial error.  See, e.g., Trenkler v. United States, 536 F.3d 85, 100 (1st Cir. 2008), cert. denied, No. 08-7947, 2009 WL 425419 (U.S. Feb. 23, 2009); Rodríguez, 527 F.3d at 225; see also Hoult v. Hoult, 57 F.3d 1, 5 (1st Cir. 1995) (explaining that a wrongly decided point of law, without more, is not a ground for relief from a judgment that has become final and unappealable).

None of this is to say that the principle of finality is immutable.  Despite the high premium that the judicial system

places on finality, there are some rare circumstances under which a party may be relieved from a final judgment. Rule 60(b) addresses this point (even though it may not exclusively encompass it). The rule has six sub-parts, but only the fifth is implicated here.

Under that sub-part, a court may grant relief from a final judgment when:

> [T]he judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

Fed. R. Civ. P. 60(b)(5). Like each of the other sub-parts of Rule 60(b), this fifth sub-part should be carefully parsed and construed with circumspection. See Cotto v. United States, 993 F.2d 274, 277-78 (1st Cir. 1993).

Giving effect to its easily discernable structure and plain language, Rule 60(b)(5) describes three sets of circumstances in which relief from a final judgment may be justified. The first category is obviously inapposite here; the plaintiffs have not argued that the judgment in Comfort III has been satisfied, released, or discharged. Rather, they assert that this case falls within either the second or third set of circumstances.

Insofar as the second set of circumstances is concerned, the plaintiffs strive to convince us that the prior judgment upon which the district court's order rested has been reversed. We are not persuaded.

The provision from which this argument derives requires a direct connection between the prior judgment and the supposedly reversing judgment. The mere emergence of controlling precedent in some other case that shows the incorrectness of the prior judgment is not sufficient. See Lubben v. Selective Serv. Sys. Local Bd. 27, 453 F.2d 645, 650 (1st Cir. 1972).

Lubben illustrates this point. There, we upheld the denial of a motion for relief from judgment even though the decisional law on which the court had relied in entering the judgment was later discredited. Id. We stated unequivocally that, in order to come within Rule 60(b)(5)'s second category, the prior judgment must be directly related to the purportedly reversing decision by, for example, giving rise to the cause of action or being part of the same proceeding. See id. In the absence of such a direct connection, "a change in applicable law does not provide sufficient basis for relief." Id. This interpretation of Rule 60(b)(5) is fully consistent with the authorities elsewhere. See, e.g., Picco v. Global Marine Drilling Co., 900 F.2d 846, 851 (5th Cir. 1990); Harris v. Martin, 834 F.2d 361, 365 (3d Cir. 1987).

The case at hand simply does not fit this mold. The opinion in Parents Involved, though squarely on point, was rendered in a completely separate case. No direct connection exists.

Little daunted, the plaintiffs try a variation on the same theme. They say that the opinion in Parents Involved

"virtually overruled" this court's en banc decision in Comfort III and, therefore, the panel decision in Comfort II is now effectively reinstated. This "virtual reversal" argument comprises more cry than wool.

The most patent flaw in this argument is that it ignores an abecedarian principle: that the Supreme Court decides only the case before it. See Hein v. Freedom from Religion Found., Inc., 127 S. Ct. 2553, 2572 (2007). While Parents Involved and Comfort III both involve the same central issue, the two cases are not connected either procedurally or structurally. Thus, Comfort III was not before the Supreme Court and, a fortiori, the decision in Comfort III was not reversed.

This reality undermines the "virtual reversal" scenario and puts an end to the plaintiffs' quest for relief under the second branch of Rule 60(b)(5). See Lubben, 453 F.2d at 650. The withdrawn panel opinion was not, by some mysterious alchemy, reinstated.

The plaintiffs' fallback position involves the third set of circumstances limned in Rule 60(b)(5). Because that provision paves the way for the granting of relief from a final judgment on a purely equitable basis, changes in precedent have a more pronounced relevance thereunder. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 383 (1992). The problem for the plaintiffs, however, is that by its terms the provision applies

-9-

only to judgments having prospective application. Fed. R. Civ. P. 60(b)(5).

The plaintiffs assert that the prior judgment here satisfies this requirement because it has a continuing effect on the school assignments of the minor plaintiffs. That assertion misreads the language of the rule and confuses prospective application with the res judicata effect that attaches to almost every final judgment. See, e.g., Allen v. McCurry, 449 U.S. 90, 94 (1980) (stating that, under federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"); Kale v. Combined Ins. Co., 924 F.2d 1161, 1164 (1st Cir. 1991) (similar).

We have understood the class of judgments having prospective application (sometimes referred to as "prospective force") to be restricted to forward-looking judgments, such as injunctions and consent decrees. See, e.g., Harvey, 494 F.3d at 241. Even then, we have limited the provision's application to injunctions and consent decrees that involve "long-term supervision of changing conduct or conditions." Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 7 (1st Cir. 2001) (noting that this provision is primarily concerned with "institutional reform litigation" and similar matters).

This narrow interpretation of prospective force makes eminent sense. When a long-term injunction or consent decree is in play, there is good reason to weigh the interests of finality and equity differently; such measures, by their very nature, envision the regulation of future conduct. See Rufo, 502 U.S. at 380-81.

The prior judgment in this case is not of that genre. It is not executory, nor does it leave open for future adjudication any issues regarding the rights of the parties. Clearly, then, the prior judgment does not have prospective application as that term has been defined in this context. See Paul Revere, 248 F.3d at 7; DeWeerth v. Baldinger, 38 F.3d 1266, 1276 (2d Cir. 1994); Twelve John Does v. Dist. of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988).

The plaintiffs offer a weak rejoinder: they say that the prior judgment constrains them to suffer under the strictness of the Policy (now known to be unconstitutional) and that, therefore, the judgment has prospective force. But that is merely an embellished way of saying that the prior judgment has res judicata effect. That is not enough: that a party may be precluded from re-litigating a matter because of claim preclusion principles is not sufficient to imbue a prior judgment with prospective force. See DeWeerth, 38 F.3d at 1276; Bailey v. Ryan Stevedoring Co., 894 F.2d 157, 160 (5th Cir. 1990); Twelve John Does, 841 F.2d at 1139.

Let us be perfectly clear.  There is more to consider under the third branch of Rule 60(b)(5) than whether a prior judgment has prospective force.  See United States v. Kayser-Roth Corp., 272 F.3d 89, 95-96 (1st Cir. 2001).  Here, however, we need not undertake a further examination because a showing of prospective force is a sine qua non for obtaining relief from judgment under the third set of circumstances limned in Rule 60(b)(5).  See id.; Bailey, 894 F.2d at 160.  Because the plaintiffs cannot satisfy this threshold requirement, a more comprehensive appraisal would serve no useful purpose.

We need go no further.  The short of it is that this case does not come within any of the three exceptions envisioned by Rule 60(b)(5).  Thus, the plaintiffs are not entitled to relief under the rule, and the district court did not err in denying their motion.[2]

**Affirmed**.

---

[2] It is puzzling why the motion was filed in the first place. The plaintiffs have acknowledged an awareness that the Policy is vulnerable to attack in a new suit brought by new complainants. That would seem to be an easy way to prevent what the plaintiffs repeatedly characterize as a miscarriage of justice.  With that option open but unutilized, the plaintiffs' claims of inequity ring hollow.