[Cite as *In re J.W.*, 2013-Ohio-4368.]

STATE OF OHIO        )                    IN THE COURT OF APPEALS
                            )ss:              NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: J.W.                          C.A. No.       26874
     J.W.
     J.W.

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 10-02-0092
                   DN 10-02-0093
                   DN 10-02-0094

DECISION AND JOURNAL ENTRY

Dated: October 2, 2013

HENSAL, Judge.

{¶1} Appellant, April W. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied her motion to vacate the November 2011 judgment that terminated her parental rights. This Court affirms.

I.

{¶2} Mother is the natural mother of three minor children, each with the initials J.W., who now range in age from 10 to 14 years old. Pursuant to dependency and neglect complaints filed by Summit County Children Services Board ("CSB") on February 22, 2010, the children were removed from Mother's custody. The trial court later adjudicated them neglected and dependent children, based on Mother's stipulation that she had serious, untreated psychiatric problems and had not been providing for the basic needs of her children. CSB's history with this family dates back to 2005, when the children were removed from Mother's custody for more

than two years for similar problems stemming from her untreated mental illness. Although the children were eventually returned to Mother's custody, CSB reopened a voluntary case with the family approximately one year later. The agency later filed dependency and neglect complaints to open an involuntary case because Mother was not working on the voluntary case plan. Mother had also committed a felony theft offense, for which she was incarcerated during part of the case planning period.

{¶3} CSB ultimately moved for permanent custody of all three children and the matter proceeded to a hearing on that motion. On November 30, 2011, the trial found that the children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in their best interests and, consequently, terminated Mother's parental rights. *See* R.C. 2151.414(B)(1). Mother did not appeal from that judgment.

{¶4} On February 26, 2013, Mother moved to vacate the permanent custody decision under Civ.R. 60(B)(4) and/or (5). She alleged that she was entitled to relief from the November 2011 permanent custody judgment because the children had not been adopted by the foster parents, as had been anticipated at the time of the permanent custody decision, and Mother had since achieved stability in her life through ongoing counseling. The trial court denied Mother's motion without a hearing, reasoning that she had failed to allege sufficient operative facts to demonstrate grounds for relief under Civ.R. 60(B). Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT DENIED WITHOUT [A] HEARING [MOTHER'S] TIMELY MOTION FOR RELIEF FROM JUDGMENT BECAUSE SHE HAD STANDING TO BRING THE MOTION AND SHE PRESENTED FACTS ESTABLISHING A CHANGE OF CIRCUMSTANCES

FOR HER CHILDREN AND HERSELF WHICH DEMONSTRATED THAT IT WAS NO LONGER EQUITABLE THAT THE TERMINATION OF PARENTAL RIGHTS SHOULD HAVE PROSPECTIVE APPLICATION OR THAT THE TERMINATION WAS IN THE BEST INTERESTS OF THE CHILDREN.

{¶5}   Mother argues that the trial court erred in failing to grant her motion to vacate the 2011 permanent custody judgment.  We begin by emphasizing that Mother sought to vacate the judgment pursuant to Civ.R. 60(B), not to "modify or terminate" the permanent custody disposition under the court's continuing jurisdiction.  *See* R.C. 2151.353(E)(2) (authorizing the trial court to modify the disposition of permanent custody upon motion by CSB or another party other than the "parent whose parental rights with respect to the child[ren] have been terminated[.]").  Nevertheless, because the court's ongoing jurisdiction tends to confuse the issues before us, an explanation of its scope is in order.

### Juvenile Court's Continuing Jurisdiction

{¶6}   In cases involving disputes over the custody of children, because the state's interest in overseeing the best interest of the children does not end when the court designates a custodian for the child, the trial court's jurisdiction continues.  Post-judgment, continuing jurisdiction exists in other types of juvenile and domestic relations court cases.  *See, e.g.*, R.C. 3109.04(E) and Civ.R. 75(J).  The sole focus here, however, is on the limited scope of the juvenile court's continuing jurisdiction after it terminates parental rights and places the children in the permanent custody of a children services agency.

{¶7}   After the juvenile court issues a permanent custody order under R.C. 2151.414, it retains continuing jurisdiction over the children until they reach the age of majority or are adopted.  R.C. 2151.353(E)(1); R.C. 2151.417(B).  It is important to emphasize, however, that the trial court's jurisdiction continues only over the children, not their natural parents.  Following

the permanent custody decision, the parents "cease to be parties to the action." R.C. 2151.414(F). Upon the entry of the permanent custody judgment, Mother lost any right to be involved in the ongoing, post-judgment proceedings. Although Mother lost her right to participate in the proceedings, however, the trial court also lost all authority over her, as she was no longer subject to its jurisdiction.

{¶8} The trial court's post-judgment jurisdiction continued solely over the children and the agency to monitor the well-being of the children, the suitability of their placements, and the agency's efforts to facilitate their adoption. The trial court is required to review those issues at least every 12 months until the children are adopted or the court terminates the custody arrangement. R.C. 2151.417(C); R.C. 2151.417(H) (review hearings may be delegated to a referee or citizens review board, subject to review by the trial court).

{¶9} At the review hearings, all who have retained their ongoing status as parties are summoned to appear and are given the opportunity to testify and present evidence. R.C. 2151.417(F). The focus of each hearing is on the best interests of the children, including their safety, the appropriateness of continuing their current placement(s), and whether changes should be made to their permanency plan. R.C. 2151.417(A). Following each hearing, the trial court is further required to "determine what actions are required by the custodial agency and of any other organizations or persons in order to facilitate an adoption of the child and make any appropriate orders with respect to the custody arrangement or conditions of the child[.]" R.C. 2151.417(G)(4). Moreover, "at any time," upon its own motion or the motion of one who remains a party to the post-judgment proceeding, the court may modify or terminate the permanent custody order, if it determines that such a change of disposition is in the best interests of the children. R.C. 2151.419(B); R.C. 2151.353(E)(2); R.C. 2151.42(A).

{¶10} In other words, the juvenile court's continuing jurisdiction in this case pertains solely to the children's well-being, custody, and the plan for finding them a permanent home. The ongoing proceedings are separate and distinct from the pre-judgment proceedings involving Mother, because she has been divested of "all parental rights" and CSB has assumed the legal status of the children's parent figure until another parent assumes that role. *See* R.C. 2151.011(B)(32).

### Mother's Standing under Civ.R. 60(B)

{¶11} Mother was no longer a party in the ongoing, post-judgment proceedings in juvenile court, and lacked standing to participate in the proceedings pertaining to the post-judgment placement and well-being of her children. Based on her lack of standing in the ongoing proceedings, CSB argues that she also lacked standing to seek relief from the judgment pursuant to Civ.R. 60(B). Although it is true that Mother lacked standing to participate in the post-judgment proceedings in the juvenile court, she did not attempt to seek redress under the trial court's ongoing jurisdiction over the children. Instead, she moved to collaterally attack the final judgment pursuant to Civ.R. 60(B).

{¶12} The relief provided by Civ.R. 60(B) is not confined to cases in which the trial court retains jurisdiction after final judgment, nor does it require that the movant be a party to an ongoing action in the court. It applies in all types of civil cases and authorizes a trial court to "relieve a party or his legal representative from a final judgment[.]" By its explicit terms, Civ.R. 60(B) provides for relief from "final" judgments, meaning those that have fully determined the rights and obligations of the parties to the action. *See Hensley v. Henry*, 61 Ohio St.2d 277, 279 (1980). In most civil cases, the trial court loses jurisdiction over the parties and their dispute upon entry of final judgment, except to enforce the judgment. A trial court typically has no

authority to change the terms of a final judgment, except as provided in the Ohio Civil Rules. *See Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380 (1981).

{¶13} Because Civ.R. 60(B) requires that movants seek relief within a "reasonable time" and within one year under certain grounds, it anticipates that parties will seek relief long after the matter is over and the court has lost jurisdiction over the parties. Even if the trial court had closed or dismissed the case, thereby terminating its jurisdiction and the ongoing status of the parties, a movant has standing to seek relief under Civ.R. 60(B) if that person was a party to the final judgment. *See, e.g., Svoboda v. City of Brunswick*, 6 Ohio St.3d 348, 349-350 (1983) (party whose complaint had been dismissed by the trial court no longer had any ongoing status as a party to that action but was entitled to seek and obtain Civ.R. 60(B) relief). The only reasonable construction of the term "party" in Civ.R. 60(B) is that it refers to anyone who is a party to the final judgment that he or she seeks to vacate.

{¶14} Although this Court has not previously addressed this issue directly, it has repeatedly recognized that a parent whose rights have been terminated has standing to challenge the permanent custody judgment pursuant to Civ.R. 60(B). *See, e.g.*, *In re S.P.*, 9th Dist. Lorain No. 02CA008129, 2003-Ohio-96, ¶ 7; *In re J.J.*, 9th Dist. Summit, No. 21842, 2004-Ohio-4059. Other appellate courts have reached the same implicit conclusion by addressing the merits of parents' appeals from the denials of their motions to vacate permanent custody judgments. *See, e.g., In re M.H.*, 8th Dist. Cuyahoga No. 85308, 2005-Ohio-2854; *In re Williams*, 10th Dist. Franklin No. 03AP-1007, 2004-Ohio-678; *In re Shell*, 5th Dist. Fairfield No. 12-CA-92, 1992 WL 307869 (Oct. 2, 1992); *In re Reisinger*, 3d Dist. Hardin Nos. 6-92-6 and 6-92-07, 1992 WL 369623 (Dec. 14, 1992).

{¶15} Although R.C. 2151.414(F) provides that parents "cease to be parties" after the permanent custody decision, "[l]ogically, this provision can only be meant to operate prospectively, excluding the parents from future proceedings relating to the child, such as review hearings." *In re Phillips*, 12th Dist. Butler No. CA 2003-03-062, 2003-Ohio-5107, ¶ 8. Moreover, because R.C. 2151.414(F) further provides that it is "not intended to eliminate or restrict any right of the parents to appeal the granting of permanent custody of their child to a movant pursuant to this section[,]" the parents similarly retain their rights to "challeng[e] the validity of the judgment rendered in the proceeding to which [she] was a party." *Id.*

{¶16} By the explicit terms of Juv.R. 2(Y) and the complaints filed in the trial court, Mother was a party to the three dependency and neglect cases involving her children. The trial court's November 2011 final judgment explicitly terminated her parental rights to each child. Because Mother was a party to that judgment, she necessarily had standing to seek relief from judgment pursuant to Civ.R. 60(B).

## Civ.R. 60(B) Merits

{¶17} Next, we turn to the merits of Mother's argument that the trial court erred in denying her Civ.R. 60(B) motion without a hearing. The trial court was not required to hold an evidentiary hearing on the motion, however, unless Mother alleged "operative facts which would warrant relief under Civ.R. 60(B)." *State ex rel. Richard v. Seidner,* 76 Ohio St.3d 149, 151 (1996); *OneWest Bank, FSB v. Stoner*, 2d Dist. Clark No. 2011 CA 13, 2011-Ohio-4672, ¶ 36. A trial court's authority to vacate a prior valid judgment pursuant to Civ.R. 60(B) is limited to the grounds set forth in the rule. *In re Appointment of Witherell*, 9th Dist. Lorain No. 01CA007936, 2002-Ohio-2328, ¶ 9. The rule's purpose in strictly limiting the situations under which a trial court has authority to vacate a prior judgment is to "'strike a proper balance between the

conflicting principles that litigation must be brought to an end and justice should be done.'" *In re Whitman*, 81 Ohio St.3d 239, 242 (1998), quoting *Colley v. Bazell*, 64 Ohio St.2d 243, 248 (1980) and 11 Wright & Miller, *Federal Practice and Procedure*, Section 2851, 140 (1973).

{¶18} To prevail on a Civ.R. 60(B) motion for relief from judgment, Mother was required to demonstrate that: (1) she had a meritorious defense or claim to present if relief was granted; (2) she was entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion was made within a reasonable time. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. "[T]he test is not fulfilled if any one of the requirements is not met." *Strack v. Pelton,* 70 Ohio St.3d 172, 174 (1994). Because Mother failed to allege operative facts that she had a ground for relief under Civ.R. 60(B), we will confine our review accordingly.

{¶19} Civ.R. 60(B) authorized the trial court to vacate its prior judgment only if Mother demonstrated one of the following grounds:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence * * * ;

(3) fraud * * * or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged * * * or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief[.]

{¶20} Mother alleged that she had grounds for relief under Civ.R. 60(B)(4) and/or (5). Although this Court generally reviews the denial of a motion under Civ.R. 60(B) for an abuse of discretion, we first must determine whether the facts alleged by Mother fall within the language of subsections (4) and/or (5). We construe the meaning of that language as a matter of law. *See*

*Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 355 F.3d 574, 583-84 (6th Cir.2004); *Sliwinski v. Village at St. Edward*, 9th Dist. Summit No. 24967, 2010-Ohio-3006, ¶ 11.

**Civ.R. 60(B)(4)**

{¶21} Mother first asserts that she stated grounds under the last phrase of Civ.R. 60(B)(4), which provides for relief from a judgment if "it is no longer equitable that the judgment should have prospective application." Civ.R. 60(B)(4). The Ohio Supreme Court has construed this language to apply to a situation in which changed circumstances make continued enforcement of the judgment inequitable. *See, e.g., Crouser v. Crouser*, 39 Ohio St.3d 177, 180 (1988), citing *Wurzelbacher v. Kroeger*, 40 Ohio St.2d 90, 92 (1974).

{¶22} Mother alleged that, because the children had not been adopted and she has stabilized her mental health through ongoing counseling, the judgment was no longer equitable in light of those changed circumstances. Civ.R. 60(B)(4) authorized the trial court to grant equitable relief based on changed circumstances, however, only if the judgment is one that has "prospective application." Although Civ.R. 60(B) does not define "prospective application" and the Ohio Supreme Court has not focused in depth on that language, it has explicitly recognized that "prospective application" means that the judgment remains executory and requires "continued enforcement" by the trial court. *See, e.g., Crouser* at 180 (judgment required "continued enforcement" by the trial court because it ordered the appellant to pay his former wife alimony for life).

{¶23} Although this Court found no Ohio case law that has directly explained the meaning of the term "prospective application" in Civ.R. 60(B)(4), its federal counterpart has been interpreted extensively. Fed.R.Civ.P. 60(b)(5) similarly provides for a judgment to be vacated if "applying it prospectively is no longer equitable." Consequently, when the Ohio

Supreme Court first interpreted the "no longer equitable" language of Civ.R. 60(B)(4), it looked to federal case law for guidance. *See Wurzelbacher*, 40 Ohio St.2d at 90 (recognizing that the federal rule contains identical language). This Court likewise found guidance in federal case law to determine whether the judgment at issue has "prospective application."

{¶24} A judgment that has prospective or continued application is one that is "forward-looking," such as a long-term injunction or consent decree, both of which "envision the regulation of future conduct." *Comfort v. Lynn School Committee*, 560 F.3d 22, 28 (1st Cir.2009). Such judgments remain "executory [and/or] leave open for future adjudication any issues regarding the rights of the parties." *Id.* As one federal district court summarized, "[p]rospective application * * * means that the judgment a party seeks to render ineffective: 1) compels a party to perform; 2) orders a party not to perform a future act; or 3) mandates court supervision of continuing interaction between the parties." *Villescas v. Abraham*, 285 F.Supp.2d 1248, 1253 (D.Colo.2003), citing *Twelve John Does v. District of Columbia,* 841 F.2d 1133 (D.C.Cir.1988).

{¶25} Permanent custody, by definition, fully divested Mother "of all parental rights, privileges, and obligations, including all residual rights and obligations." R.C. 2151.011(B)(32). Through the November 2011 permanent custody judgment, the trial court had fully determined Mother's parental rights and she was not required to perform any ongoing or future actions, nor was she ordered to abstain from any conduct. The judgment did not require any continued enforcement against Mother. Although the trial court retained continuing jurisdiction over the children, it no longer had authority over Mother, as she had ceased to be a party subject to its jurisdiction. R.C. 2151.353(E)(1); R.C. 2151.414(F).

**{¶26}** Mother further suggests that the 2011 permanent custody judgment had prospective application because she and the children continue to be bound by its terms, but that preclusive effect on the parties is something that is common to all judgments. "'Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect[.]   That a court's action has continuing consequences, however, does not necessarily mean that it has prospective application for the purposes of [Federal] Rule 60(b)(5).'" *Maraziti v. Thorpe,* 52 F.3d 252, 254 (9th Cir.1995), quoting *Twelve John Does*, 841 F.2d at 1138.  "If this were enough to satisfy [the] threshold requirement, then the Rule's requirement of 'prospective application' would be meaningless." *Coltec Industries, Inc. v. Hobgood*, 280 F.3d 262, 272 (3d Cir.2002).

**{¶27}** Because the trial court's permanent custody judgment left nothing unsettled between the parties or open to future adjudication or enforcement, it had no "prospective application."  Consequently, Mother did not raise a ground for relief under Civ.R. 60(B)(4).

### Civ.R. 60(B)(5)

**{¶28}**  Alternatively, Mother argues that she set forth grounds to vacate the permanent custody judgment under Civ.R. 60(B)(5), which authorized the trial court to vacate the judgment for "any other reason justifying relief."  Mother's argument that she is entitled to relief under Civ.R. 60(B)(5) is virtually identical to her argument under Civ.R. 60(B)(4).  Without citing any legal authority, she argues that, because the subsequent circumstances of the parties have not evolved as the trial court may have anticipated, she is entitled to relief under Civ.R. 60(B)(5).

**{¶29}**  Although the language of this so-called catch-all provision is broad, and reflects "the inherent power of a court to relieve a person from the unjust operation of a judgment," the Ohio Supreme Court has held that the grounds for invoking relief under this provision must be

"substantial." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64 (1983), paragraphs one and two of the syllabus. Relief under Civ.R. 60(B)(5) should only be granted in an "extraordinary and unusual case[.]" *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 105 (8th Dist.1974).

{¶30} For example, the Ohio Supreme Court has held that "fraud upon the court" falls within the realm of Civ.R. 60(B)(5). *Coulson v. Coulson*, 5 Ohio St.3d 12 (1983), paragraph one of the syllabus. Similarly, "[a] judge's participation in a case which gives rise to the appearance of impropriety and possible bias could constitute grounds for relief under Civ.R. 60(B)(5)." *Volodkevich v. Volodkevich*, 35 Ohio St.3d 152, 154, (1988). Relief pursuant to this provision may also be granted for court errors and omissions, which are "distinct" from mere errors in judgment that can be remedied through a timely appeal. *See In re S.J.*, 9th Dist. Summit No. 23199, 2006-Ohio-6381, ¶ 23. Each of these examples involved unusual circumstances that were not disclosed to all parties at the time of judgment, and which inherently affected the accuracy and reliability of the trial court's judgment.

{¶31} Mother has not demonstrated that such extraordinary or unusual facts exist in this case. Although the circumstances of the parties have changed in a way that may not have been expected at the time of judgment, those changes have no bearing on the legal soundness of the trial court's original decision made under the facts at that time. Facts and circumstances of the children and the parents will often change in ways that are not specifically anticipated at the time of permanent custody decision. The purpose of Civ.R. 60(B) is to limit the trial court's authority to vacate judgments, not to open all judgments to collateral attack based on changed circumstances of the parties.

{¶32} In an analogous situation, Mother would state no ground for relief under Civ.R. 60(B) if there had been a subsequent change in the controlling case law. The Ohio Supreme

Court has held that Civ.R. 60(B)(5) does not authorize relief from a judgment simply because the controlling case law was later overruled or declared erroneous in an unrelated proceeding. *Doe v. Trumbull Cty. Children Services Bd.*, 28 Ohio St.3d 128 (1986), paragraph one of the syllabus. Balancing concerns for justice against the need for finality in judgments, the Court emphasized that "[s]uch a result would undermine the stability of final judgments and, in effect, render their enforceability conditional upon there being 'no change in the law.'" *Id*. at 131, quoting *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 841 (11th Cir.1982). Moreover, unlike other circumstances that Ohio courts have recognized as justifying relief under Civ.R. 60(B)(5), a change in controlling case law would not undermine the legitimacy of the trial court's judgment at the time it was entered.

**{¶33}** Because Mother failed to set forth operative facts that she had grounds for relief from the permanent custody judgment under either Civ.R. 60(B)(4) or (5), the trial court did not err in denying her motion without a hearing. Mother's assignment of error is overruled.

III.

**{¶34}** Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I agree that Mother's assignment of error should be overruled. Mother has suggested that the trial court prematurely ruled on the matter because it issued a decision prior to the submission of Mother's reply brief. Mother has not fully developed this argument nor explained how this constitutes prejudicial error. In addition, I agree that the trial court did not err in concluding that Mother failed to demonstrate her entitlement to relief under Civ.R. 60(B)(4) or 60(B)(5). With respect to Civ.R. 60(B)(4), I believe the majority has adopted too narrow an interpretation of the "prospective application" language contained in the rule. However, I agree that under the circumstances of this case, Mother did not demonstrate entitlement to relief under Civ.R.60(B)(4).

APPEARANCES:

WILLIAM T. WHITAKER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.